Dora A. Briant v. The Detroit, Lansing & North-    | 104   307
ern Railroad Company.                               | e121  327

*Railroad companies—Fires—Contributory negligence—Condition of right of way.*

1. A wooden planing mill and the machinery used therein, owned by the plaintiff, and standing within about 34 feet of defendant's side track, were destroyed by fire communicated, as claimed by plaintiff, from one of defendant's engines by reason of the negligence of its employés. The mill was built by plaintiff's grantors, had a sheet iron roof, and had been idle for about 18 months at the time of the fire. Plaintiff sued to recover the value of the mill and machinery. And it is held that a request of the defendant for an instruction that, in so constructing or maintaining said mill, the plaintiff was guilty of negligence *per se*, and could not recover, was properly refused.

2. The defendant removed a platform from the side of the mill,

and deposited the planks and timbers of which it was constructed into a ravine on defendant's right of way, lying between the mill and the side track, and covered said material with sawdust and shavings. The plaintiff notified defendant's section foreman of the situation, and the foreman promised to cover the material with cinders. A short time before the fire plaintiff visited the mill, and found that the foreman's promise had not been kept, and that the sawdust and shavings were scattered about on the top of the ground so that there was danger from fire; and, although it was a dry time, he went away without leaving the mill in charge of any one except his family, who lived two blocks away, and without notifying the defendant, or taking any action to protect the property, and did not return again until after the fire. And it is held that the defendant's servants were responsible for the condition of the sawdust and shavings; that the plaintiff, when he left, had a right, in view of the promise of the foreman, to presume that the right of way would be put in a safe condition; and that the court properly refused a request for an instruction that the plaintiff, in thus leaving his property without taking steps for its protection, or notifying the defendant of the situation, was guilty of contributory negligence.

Error to Montcalm. (Daboll, J., presiding.) Argued February 1, 1895. Decided March 5, 1895.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Smiley, Smith & Stevens,* for appellant.

*FitzGerald & Barry* (*Francis A. Stace,* of counsel), for plaintiff.

Long, J. This action is brought to recover the value of a planing mill and the machinery situated therein, which were destroyed by fire, originating, it is claimed, from an engine of the defendant in operating its train upon its tracks opposite the mill property, April 20, 1892. The plaintiff recovered verdict and judgment for $4,600.

The evidence showed that the railroad was first constructed. The defendant asked the court to instruct the jury that—

"The undisputed evidence shows that the railroad was constructed first, and the mill afterwards; that it was a wooden building, except that the roof was covered with iron; that by reason of its close proximity to the defendant's tracks it was dangerous, and liable to take fire from engines upon defendant's tracks; that in so constructing or maintaining his mill the plaintiff was guilty of negligence, and cannot recover."

It is contended by this request that it is negligence *per se* to build or maintain a wooden building near a railroad track. Counsel cite, in support of their claim, *Kendrick v. Towle,* 60 Mich. 363. In that case the mill had been built prior to the time the railroad was constructed there; and it was held that the defendant had the right to build a railroad track, and conduct business thereon by running trains within 30 or 40 feet of the plaintiff's mill; that it was a lawful, but a hazardous, business; and that the care and caution required of the owner of the railroad must be commensurate with, and in proportion to, the risks assumed.

In the present case the court charged the jury as to the degree of care the plaintiff must exercise as follows:

"The plaintiff or his grantors having erected the mill in close proximity to the railroad track,    *    *    *    he must be held to have known of the risk incident thereto; and, if there was a special risk, arising from no want of care in the proper equipment and management of the engine in question, that risk is not chargeable to the railroad, but is an incident to the situation, and the plaintiff cannot recover."

The court stated further:

"The plaintiff, having established himself along the line of the defendant's right of way, and in close proximity to its track, where its locomotives would be expected to run, assumed all risk incident thereto; and, if this fire occurred from no want of care in the proper equipment and management of its engines and trains, then such fire is not chargeable to the defendant, and the plaintiff cannot recover."

And again, the court said:

"The plaintiff or his grantors having erected his mill adjacent to the right of way of the defendant, where the same was thus exposed to all risks incident to the use of engines near said premises, the obligation of care to prevent fire from such engines of the defendant from burning the mill of the plaintiff, by reason of catching in any combustible matter about such mill and upon the premises of the plaintiff in near proximity to such track, rested upon the plaintiff. And if the jury find that such fire was communicated to the mill by reason of the neglect of the plaintiff to comply with such obligation, the plaintiff would then be guilty of contributory negligence and cannot recover."

And again, the court said:

"The railroad had a perfect right to run and operate its trains in front of the plaintiff's mill, and was not guilty of negligence in so doing, and by law it is not made liable for fires set in so doing, provided its engines, machinery, smokestack, and fire boxes were in good order, and properly managed.    *    *    *

"The law does not make the company an insurer that its engines will not set fire. If the machinery of its engines, their smokestacks and fire boxes, are in good order, and properly managed, that is all that is required, so far as its engines are concerned, to exempt the company from liability."

The court then stated to the jury that the charge thus far given had reference almost entirely to the rights and liabilities of the defendant under the statute; that the statute, however, was not intended to relieve a railroad company from its common-law liability for acts of negligence, but that, when the act originated from either of the causes mentioned in the statute, the burden is cast upon the railroad company to show it is free from negligence; and therefore:

"It was the duty of the defendant to keep its track and grounds reasonably clear of combustible material, and, if the jury find that defendant negligently allowed combustible material to be and remain upon its grounds, and if, in consequence thereof, fire emanating from a loco-

motive engine ignited such combustible material, and the fire thus ignited spread to plaintiff's grounds, and destroyed his mill, then defendant is in that case liable for all the damage so incurred; and it is in that case no defense that the engine, its machinery, smokestack, and fire box were in good order, and properly managed.    *    *    *

"If the jury find that the fire in question originated from the engine number six, but that this engine, its machinery, smokestack, and fire box were in good order, and properly managed, that all reasonable precautions had been taken by the railroad company to prevent the origin of such fire, and that proper efforts were made to extinguish the same when the existence of the fire was communicated to any of the officers of the company, the defendant is not liable, and the plaintiff cannot recover in this action.    *    *    *    *    *    *    *    *    *

"The law does not make the company an insurer that its right of way shall be kept so clean that a fire cannot take upon it. All that it requires in regard to its right of way is that reasonable precautions shall be taken to prevent fires from originating upon it."

This charge, as given, stated the case under the law as fairly as the defendant was entitled to; and there is no statement in *Kendrick v. Towle* which would have warranted the court in giving defendant's request to charge.

The same claim was made in *Alpern v. Churchill,* 53 Mich. 607. There the plaintiff erected her house after the mill had been put up which caused the fire that destroyed her house. The contributory negligence claimed was that the plaintiff erected her building within a hundred yards or so of defendants' mill after a dangerous burner had been put up, and did not cover it with a metallic roof. It was said:

"She was simply dealing with her own property in a customary and perfectly lawful way, interfering with no one else, and neglecting no duty."

In the present case the plaintiff's mill was erected upon his own land. He took the precaution to put on a metallic roof, for the purpose of guarding against fires of

this character. It cannot be said to be negligence *per se* to erect such a building in close proximity to the railroad track; but, as said by the court below, the plaintiff having erected it there knowing the circumstances, he must be held to have known of the risk incident thereto, and, if there was a special risk, arising from no want of proper equipment of the engine, or want of care in its management, the risk would not be chargeable to the defendant, but would be an incident to the situation, and the plaintiff could not recover. The court also by this charge instructed the jury that it was the plaintiff's duty to keep his premises free from combustible matter, and, if he failed to do so, and the fire happened in consequence, then he could not recover; also, that if plaintiff failed to take all reasonable precautions against fire under the circumstance of his proximity to the railroad, and the fire happened in consequence of such neglect, he could not recover. Certainly the defendant had no reason to complain of this charge.

In *Railway Co. v. Jones*, 86 Ind. 496, it appeared that fire had been set by a passing engine to dry grass on the railroad right of way, which had thence communicated to dry grass and combustible matter on plaintiff's adjoining premises, destroying his fences and grass. It was held that the failure of plaintiff to remove dry grass or stubble from his own land to prevent the spread of fire was not contributory negligence on his part. This rule was followed in *Kellogg v. Railway Co.*, 26 Wis. 223.

The rule is laid down in Shearman and Redfield on Negligence (section 92) as follows:

" As there is a natural presumption that every one will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence on the part of the defendant. * * * Even where the plaintiff sees that the defendant has been negligent, he is not bound to anticipate all the perils to which he may

possibly be exposed by such negligence, or to refrain absolutely from pursuing his usual course on account of risks to which he is probably exposed by the defendant's fault."

This doctrine is held in England, as stated in *Vaughan v. Railway Co.*, 3 Hurl. & N. 743; *Clayards v. Dethick*, 12 Q. B. 439. The court was not in error in refusing the defendant's request to charge.

The court was also asked to charge the jury that—

"If the jury find that the plaintiff, on Sunday preceding the 9th of April, 1892, before he left for West Superior, visited his mill premises, and found them in a dangerous condition, and likely to take fire, and that without notifying the defendant, or taking any action to protect his property, he left it, and went out of town on April 9, 1892, and remained away, then he was guilty of contributory negligence, and is not entitled to recover in this action."

The proofs showed the following state of facts as to the situation and surroundings of the mill and its proximity to the railroad tracks, and the knowledge of the plaintiff as to the situation: The plaintiff introduced several witnesses, who gave evidence tending to show the manner in which the building took fire. It appears that a platform made of planks had been constructed between the plaintiff's building and the defendant's side track, and that teams were accustomed to go upon this platform; that it became old, and in February or March, 1892, the servants of the railroad company, with the consent of the plaintiff, removed this old platform, and threw the material of which it was constructed into a ravine which extended north and south under the platform, and between the mill and the defendant's side track. They partially filled up this ravine with the *debris* from this old platform, and put sawdust and dirt upon the top of it. It was contended by the plaintiff that sawdust and shavings were left upon the top of the material from the platform, and it was contended by the

defendant that this material had been covered with dirt and cinders. There was a conflict in the testimony as to the condition in which the surface of the ground between the mill and the railroad track was left by the railroad company after tearing down the platform, and covering, or partially covering, the space between the mill and the track. The plaintiff testified that he spoke to Mr. Fitz Patrick about it in February or March previous to the fire, and told him that he was making a fire trap there; that they were putting sawdust and dirt over next to the track and in the ravine. From the testimony of several witnesses for the plaintiff it appeared that the fire was discovered at or near the south-east corner of the shaving room, between the railroad track and the south-east corner of the mill or shaving room, and that it was seen there about the time, or immediately after, the train of the defendant, which had been switching upon the track and side track immediately east of the mill, started from the depot of the defendant south upon the line of the road. It further appeared that, just as the train was starting out of Stanton, the engineer and fireman both saw the fire burning on the ground on the defendant's right of way near the mill, but that they did not stop the train, or give any notice of the fire, until arriving at the next station; and that, immediately after the train left, the fire was discovered by others, and that no other fire was in the neighborhood. One of the plaintiff's witnesses testified that he was at the mill on the Sunday previous to the fire; that his attention was attracted to the fact that on the east side of the shaving room it had been graded down about two feet right next to the building, or a little under it; that it looked as though it had been graded five or six inches under the edge of the shaving room, and that near the corner shavings had run out, and that there was a barrel or two of shavings there, and that they had rolled

down a little embankment, and that it was a very dry time. Another witness for plaintiff testified that he was there in February or March, and saw the section hands digging near the south-east corner of the shaving room, and that he saw shavings near the corner of the shaving room, scattered along. He also testified that he was there at the time of the fire, and that the fire was then burning in the corner of the shaving room, on the outside. When he got there it was pretty near the roof, and he noticed the fire burning on the ground on the east and towards the railroad. Another of plaintiff's witnesses testified that he was at the fire, and saw it burning near the south-east corner of the shaving room. He also saw the premises before the fire, and testified that there were shavings near the south-east corner of the shaving room then, which had been scattered about by the wind. On rebuttal the plaintiff was recalled as a witness in his own behalf, and testified that he went to West Superior, Wis., on the 9th of April, 1892, and that on the Sunday before going he went to the mill in question; that the work was not finished; that he saw the roadway on top of the timbers, and refuse had been put in there, so that the shavings and sawdust were scattered about on top of the ground; that the shavings were there on top of the ground, so that he considered it dangerous from fire; that it was a dry time; that he went away without leaving the mill in charge of any one except his family, who lived two blocks away; that he left no watchman nor any one there to look after the mill. He also testified that the shavings and sawdust were scattered about so that they appeared on top of the surface, and that he thought it was in a dangerous condition; that when he saw this condition of things in front of the mill he did not do anything towards fixing it; that he did not go to look at it again between that time and the time he went away to West Superior. The defendant's witnesses gave

evidence tending to show that the roadway between the mill and the track was in good condition, covered over with dirt and cinders; that the smokestack and fire boxes of its engine were in good repair and perfect condition; and that the engine was properly operated at the time it was switching upon its tracks in front of the mill that day.

It appears that the defendant's servants had caused this exposed condition of the sawdust and shavings. They had placed them there, and had promised the plaintiff to cover them when their attention was called to their condition, and that it was making a fire trap. It was upon defendant's right of way. This was in February or March, but after that they had covered a portion. When the plaintiff left for West Superior, he had the right to presume that they would put the right of way in a safe condition. It is apparent that, had this been done, the fire would not have occurred, as it seems to have originated in this uncovered portion of the right of way. The refusal of this request to charge, under the circumstances, was proper.

Contributory negligence is where one acts so as to contribute by direct consent to or participation in the wrong complained of. *Moomey v. Peak,* 57 Mich. 259. In the above case it was shown that a steam thresher was placed near the plaintiff's haystacks. Plaintiff was plowing in a field near by, and made no protest. The wind was blowing, carrying the smoke from the thresher directly over the hay. After the evidence was in, the plaintiff asked the court to instruct the jury that—

"Contributory negligence is where one so acts as to contribute by direct consent to or participation in the wrong complained of; and if Moomey [the plaintiff] did not consent to what was done there on the day of the fire, or did not, by any act of his, participate therein, than he, in contemplation of the law, did not contribute to the burning complained of."

This was refused. It was held by this Court that the request should have been given, and that there was no evidence fairly tending to fix upon the plaintiff the charge of contributory negligence.

In the present case the plaintiff was there a short time previous to the fire. The premises may have been in an exposed condition, but they were so put by the act of the defendant. There was no fire then on the premises. It is true that, if the fire had then been started, and the plaintiff could have extinguished it, he would have been in fault in not doing so; but he had no greater reason to expect that the defendant would carelessly run its engine past there at that time than at any other, and the condition was as well known to the defendant's agents as to the plaintiff.

The defendant further asked an instruction that under the evidence the plaintiff could not recover. We need not discuss this request. It was properly refused. There was evidence to go to the jury on the questions raised, and those questions were fairly submitted.

Plaintiff's counsel contend that under How. Stat. § 3378, the defendant was liable for the fire, and, if there had been any contributory negligence on the part of the plaintiff, it would not prevent a recovery for the loss. In the view we take of the case, that question is not important. The question of the plaintiff's contributory negligence was fairly submitted to the jury under the proofs made, and they have found in his favor. We therefore need not pass upon that question.

The judgment must be affirmed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.