NEVERSORRY *v.* DULUTH, SOUTH SHORE & ATLANTIC RAILWAY CO.

1. Railroad Companies—Right of Way—Fences.
   At the common law, railroad companies were not required to fence their property.

2. Same—Statutes—Police Power.
   The statute requiring railroad companies to erect and maintain fences of a specified height and character along their rights of way was adopted pursuant to the police power of the State, not alone as a protection to the property of adjacent owners, but as a protection to the employés and passengers upon trains.

3. Same — Agreement with Adjacent Owner — Effect on Rights of Third Persons.
   The amendment of 1885 (3 How. Stat. § 3377), providing that nothing contained in the statute shall be construed to prevent the erection of such fences as may be agreed upon in writing between the railroad company and the owner of land through

which the road runs, does not enable the company to avoid
liability to third persons for killing stock, by agreeing with
the landowner for the erection of a fence not reasonably
sufficient to prevent stock from straying upon the right of way.

4. SAME.

A landowner, however, who loses stock because of the insuf-
ficiency of a fence which he has himself erected and main-
tained pursuant to an agreement with the company, has no
right of action for his damages.

5. SAME—CONTRIBUTORY NEGLIGENCE.

The contributory negligence of the owner of stock in permit-
ting it to run at large is no defense to an action, where the
animals get upon the right of way through defective fences
maintained by the company, or by adjacent owners under
agreement with the company.

6. SAME—EVIDENCE—NOTICE.

Where, in an action against a railroad company for killing
stock upon its right of way, there is evidence tending to show
that the bars through which the stock got upon the right of
way were improperly constructed, evidence that they had
been frequently found down, and had been replaced by em-
ployés of the company, is admissible to charge the company
with knowledge of their defective condition.

Error to Chippewa; Steere, J.   Submitted October 8,
1897.   Decided December 7, 1897.

Case by Harriett Neversorry against the Duluth, South
Shore & Atlantic Railway Company for killing stock.
From a judgment for plaintiff, defendant brings error.
Affirmed.

Three horses belonging to plaintiff were killed upon the
defendant's right of way by one of its trains.   Recovery
was based upon the failure of the defendant to maintain
proper fences.   One David Crowley owned 160 acres of
land, through which defendant's road passed.   By an
arrangement between Crowley and the company, two
openings were made in the fences on each side of the
track, and opposite Crowley's house and inclosure, for
his convenience and accommodation, to enable him to go

to and fro, and to reach the highway on the south side of the railroad. Two sets of bars were placed in these openings, instead of gates. Crowley evidently was to take care of them. He had about an acre inclosed by an apology for a fence, consisting simply of poles resting on stumps from a foot and a half to three feet high. Some of these were down at the time. The horses strayed into this inclosure after dark, and were either driven by Crowley onto the railroad track, as claimed by the defendant, or strayed through the bars onto the right of way. Plaintiff recovered verdict and judgment.

*Oren & Webster*, for appellant.

*Warner & Sullivan*, for appellee.

GRANT, J. (*after stating the facts*). 1. The principal defense urged is that railroad companies and adjacent landowners may contract as to the character of fences, bars, or gates to be provided at farm crossings; and that, when they do so agree, the company is not liable for the loss of animals which enter the right of way through such fences, bars, or gates, and are injured or killed. At the request of defendant, the court instructed the jury as follows:

"If plaintiff's horses got onto the railroad track by reason of the bars in front of Mr. Crowley's being put down, either by Mr. Crowley or some one acting under his directions, under the facts in this case the plaintiff cannot recover, regardless of the height of the bars in question. If the bars in question were sufficient to reasonably serve the purpose of turning back such beasts as such bars are generally designed to restrain, then the defendant is not liable to maintain a better one, and your verdict must be for the defendant."

The case was left to the jury upon the theory that bars and gates at these farm crossings, which were constructed by agreement, were not required to be of the height and character provided for by the statute, but only of a height and character sufficient to reasonably guard against the intrusion of animals.

At the common law, railroad companies were not required to fence. *Williams* v. *Railroad Co.*, 2 Mich. 259; *Continental Improvement Co.* v. *Phelps*, 47 Mich. 299. The right to compel railroads and landowners to fence is founded upon the police power of the State. *Staats* v. *Railroad Co.*, 4 Abb. Dec. 287; *Corwin* v. *Railroad Co.*, 13 N. Y. 46; *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510; *Gilson* v. *Munson*, 114 Mich. 671. This statute was adopted, not alone as a protection to the property of adjacent owners, but as a protection to the employés and passengers upon railroad trains. Same authorities; also, *Bay City, etc., R. Co.* v. *Austin*, 21 Mich. 390. It follows that the contributory negligence of the plaintiff in permitting his animals to roam at large is no defense to an action where such animals get upon the right of way through the defective fences of the company. *Flint, etc., R. Co.* v. *Lull, supra; Grand Rapids, etc., R. Co.* v. *Cameron*, 45 Mich. 451; *McDonald* v. *Railway Co.*, 51 Mich. 628.

The statutes of this State, after providing very minutely for the character and height of fences to be erected and maintained by railroad companies, contain the following proviso, which was an amendment to the law in 1885:

"*Provided, further*, that nothing herein contained shall be construed to prevent the erection of any other fence than that herein provided for, as may be agreed upon in writing between the duly-authorized agent or officer of any railroad corporation and the owner of any land through which the road of such corporation may be in operation." Act No. 234, Pub. Acts 1885, § 15 (3 How. Stat. § 3377).

While there are authorities holding that cattle trespassing are not within the protection of this law, yet the weight of authority is to the contrary. 7 Am. & Eng. Enc. Law, 929–932. Evidently, the legislature did not intend to leave the character of these bars and gates at farm crossings, erected by agreement, in doubt or uncertainty, for it provided that the agreement between them must be in writing. The agreement in this case

rested in parol. It is true tha Crowley could not have recovered for damages to his animals which entered the right of way through these bars, because they were just such as he chose to erect and maintain. *Enright* v. *Railroad Co.*, 33 Cal. 230. When we consider that the broad purpose of this police enactment, under the authorities above cited, is to protect railroad employés and passengers, as well as the property of adjacent owners and others living in the vicinity, and that contributory negligence of the owners of stray animals is no defense, it is impossible to reach the conclusion that a railroad company is entirely relieved from liability by permitting an adjacent owner to put up any such fence, bars, or gates as he may choose. If it were so held, the practical result would be to annul the statute, and relieve the companies from any liaoility whenever they and the adjacent owners see fit to agree to any kind of a fence. They might agree to such a fence as Crowley had put around his inclosure, which was practically little better than no fence at all.

2. There was evidence tending to show that the bars were not properly constructed; that they consisted of three poles, about three inches in diameter, the top one three feet five inches from the ground, the bottom one ten inches, and the middle one halfway between; that two boards were nailed to the posts, with six little pieces laid across them for the poles to rest on; and that the ends of the poles rested loosely on these pieces. Testimony was introduced tending to show that the bars had been frequently found down, and that the section men had sometimes put them up. This was offered to show knowledge on the part of the company of the condition of the bars. If it had been conclusively shown that the bars were properly constructed, this testimony would have been incompetent. No liability would then have attached to the company without showing that the bars were down through its fault. The court, in effect, so instructed the jury. But, in view of our conclusion that the company is liable for negligence in construction, it was competent to

show its knowledge upon this point. The testimony naturally tended to show this, for its employés, in putting up the bars, must necessarily have learned their construction and condition.

The judgment is affirmed.

The other Justices concurred.