PETER *v.* CHICAGO & WEST MICHIGAN RAILWAY CO.[1]

1. RAILROADS—SETTING FIRES—PRECAUTIONS—APPROVED APPLIANCES.

Under 1 How. Stat. § 3378, relieving a railroad company from liability for a fire set by a locomotive when it is able to prove that the machinery, smokestack, and fire-boxes were in good order and properly managed, and that all reasonable precautions had been taken, an instruction that the company would not be liable if the appliances used to prevent the escape of sparks and fire were of a pattern in common use by experienced and prudent railroad operators, states the correct rule.

2. SAME—INSTRUCTIONS.

Where lumber was set on fire by sparks from an engine on a stub road in a timber district, an instruction that the company would be relieved from liability if the engine in use at the time was such a one as prudent operators were accustomed to use in that "kind of business" would be erroneous, if understood to mean that a less degree of care was required than in the ordinary business of the company.

3. SAME—MATTERS OF DEFENSE—CONTRIBUTORY NEGLIGENCE.

The specification in the statute ( 1 How. Stat. § 3378 ) of the facts the proof of which will relieve a railroad company from liability, viz., the good order and proper management of the machinery, smokestack, etc., excludes the right to rely on plaintiff's contributory negligence as a bar to recovery.

4. SAME.

Even if such defense were available, it would not be established by proof that plaintiff piled the lumber which caught fire at a distance of eight feet from defendant's track.

5. SAME—INSURANCE—COMMENT OF COUNSEL.

In an action against a railroad company for negligently setting fire to lumber, comment of defendant's counsel as to the relation of certain insurance companies to the case is improper; the fact that the property was insured being inadmissible in defense.

GRANT, C. J., and LONG, J., dissenting.

---

[1] Rehearing denied April 3, 1900.

Error to Muskegon; Russell, J. Submitted November 17, 1898. Decided September 27, 1899.

Case by William Peter against the Chicago & West Michigan Railway Company for the alleged negligent burning of lumber. From a judgment for defendant, plaintiff brings error. Reversed.

*Bunker & Carpenter* (*R. W. Barger*, of counsel), for appellant.

*F. A. Nims* and *William Alden Smith*, for appellee.

MONTGOMERY, J.   This action is brought to recover the value of a large quantity of lumber belonging to the plaintiff, which was consumed by fire occurring on the 18th of November, 1893, which fire is claimed to have had its origin in sparks emitted from an engine on defendant's road.   The lumber was manufactured for the plaintiff by Horning & Hart, who owned a mill at Keno, a place between three and four miles north of Woodville, a station on the defendant's Big Rapids branch.   The track into Keno was built by defendant at its own cost, except for right of way, and was originally used exclusively for the purpose of taking out the plaintiff's lumber.   Later the defendant extended the track to reach other mills farther north, owned by other parties.   The evidence of plaintiff tended to show that the engine used on the road set out the fire, which destroyed over 7,000,000 feet of plaintiff's lumber, valued at over $90,000; that the engine used was of an old pattern, known as the diamond-stack pattern, not in common use.   The defendant's testimony tended to show that the engine was in good order, of a design in common use, and entirely serviceable.   The defendant also offered testimony tending to show that the lumber where the fire started was piled but eight feet from the track, and that provisions for putting out fire were wanting.   The jury found for the defendant, and the plaintiff brings error.

Numerous questions are presented in the brief of the plaintiff's counsel, the more important being whether the court laid down the correct rule as to the negligence of defendant; whether the court erred in submitting the question of plaintiff's contributory negligence to the jury; and whether there was error in allowing comments of counsel as to the relation of certain insurance companies to the case, it appearing that the lumber had been insured.

1. The statute defines the extent of liability of railroad companies, and, in determining the question of defendant's duty, reference to the statute is essential. Section 3378, 1 How. Stat., reads as follows:

" Any railroad company building, owning, or operating any railroad in this State shall be liable for all loss or damage to property by fire originating from such railroad, either from engines passing over such roads, fires set by company employés by order of the officers of said road, or otherwise originating in the constructing or operating of such railroad: *Provided*, that such railroad company shall not be held so liable if it prove to the satisfaction of the court or jury that such fire originated from fire by engines whose machinery, smokestack, or fire-boxes were in good order and properly managed, or fires originating in building, operating, or repairing such railroad, and that all reasonable precautions had been taken to prevent their origin, and that proper efforts had been made to extinguish the same in case of their extending beyond the limits of such road, when the existence of such fire is communicated to any of the officers of such company."

It will be noted that the character of the engines to be used is not defined, although it is required that, to relieve the company from liability for fires, the engines, etc., must be shown to be in good order and condition. It is not open to question that under this statute, on the plaintiff's showing the fact of the fire from the defendant's locomotive, the burden is cast upon the defendant to show that the locomotive was in good order and condition, and properly managed. The court in this case so charged. The plaintiff claims, however, that the court did not lay down the correct rule as to the character of the engine re-

quired in order to relieve the defendant. The court charged upon this subject as follows:

"The railroad company is exonerated from liability under the statute if the appliances it has used to prevent or limit the escape of sparks and fire from the locomotive are such as have been in common use for a long time for that purpose, and have substantially guarded against the danger sought to be avoided. * * * If you should find that this defendant used this engine, and it was of such a pattern as was in common use by careful, experienced, and prudent railroad operators, and such as they would use and did use for this kind of business at that time, why that is all that is necessary for this defendant to do, so far as the quality of the engine is concerned."

We think the charge of the circuit judge correctly stated the rule as established in this State in *Hagan* v. *Railroad Co.*, 86 Mich. 615. As was said in that case:

"Two or more kinds of appliances may be used, each one of which is approved by a number of railroad companies which are managed by practical and prudent men, and the adoption of each may have been after careful consideration of the merits of all; yet, unless that adoption and approval has some weight, there is no safety in the use of either."

Under the instruction given, the jury were not authorized to find that it was proper to use a character of locomotive which had been generally displaced by better appliances. The only doubtful expression in the charge was the reference to "use for this kind of business." If this were understood to mean that a less degree of care was required in this service than in the ordinary business of the company, it was not proper, as we think the company was bound to use the same degree of caution at this place as at other points on the road.

2. The case presents a question of exceeding importance and interest, which is whether the plaintiff's contributory negligence is a bar to recovery under this statute. This question was mooted in *Briant* v. *Railroad Co.*, 104 Mich. 307; but, as its decision was not necessary to a

determination of the case, it was not settled. The authorities bearing directly upon the subject are not numerous, but, as we read them, they are harmonious. The question of the effect of plaintiff's contributory negligence has arisen in three classes of cases:

*First.* Where the liability of defendant rests upon the common law.

*Second.* Where the liability of the company for fires set out by its locomotives is made absolute by statute.

*Third.* Where, as in this State, such liability is limited by the statute itself.

In the first class of cases, the contributory negligence is a defense; in the second class, the liability of the company is absolute, and the contributory negligence of the plaintiff is not a defense. 3 Elliott, R. R. § 1238. This case falls within the third class. The statute creates an absolute liability for all loss or damage to property by fire originating from engines, etc., with a proviso that the company shall not be liable if it proves certain facts enumerated, among which is not the contributory negligence of the plaintiff.

In the case of *Laird* v. *Railroad,* 62 N. H. 254 (13 Am. St. Rep. 564), the supreme court had under consideration a statute of Vermont which read:

"When any injury is done to a building or other property by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be responsible in damages for such injury, unless they shall show that they have used all due caution and diligence, and employed suitable expedients, to prevent such injury." Gen. Stat. Vt. (1862) chap. 28, § 78.

The court held that the contributory negligence of plaintiff did not constitute a defense, under this statute. The decision was rested upon two grounds: (1) The analogy of the Vermont decisions holding that the contributory negligence of the owner of animals killed or injured by a railroad company which had not fenced its tracks constituted no defense; and (2) that the fair construction of

the statute led to the result reached. The court said: "The statute expressly declares in what cases the corporation shall be relieved from liability, and no other defense is recognized, except showing 'that they have used all due caution and diligence, and employed suitable expedients, to prevent the injury;'" and held that the rule "*Expressio unius est exclusio alterius*" applied.

It will be readily seen that the case cited is directly in point, and that both grounds upon which the case rested, may be urged with equal force in this State; for not only is there the same room for the application of the rule "*Expressio unius est exclusio alterius*," but we have also held in this State that the defense of contributory negligence is not available in an action under the preceding section of our statute (1 How. Stat. § 3377), which provides that the company shall be liable for damages done to cattle, etc., in case of a failure to fence its tracks. *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510; *Neversorry* v. *Railway Co.*, 115 Mich. 146. The reasoning of the court in *Laird* v. *Railroad, supra,* is convincing, and seems to us unanswerable. To reach any other conclusion, we must interpolate into the statute words not found there, and create an additional ground for exemption. The contention of appellant is also sustained by numerous cases which hold that, under a statute fixing the liability of a railroad company for fires set out by its locomotives, the defense of contributory negligence is not available. Of this class are *Rowell* v. *Railroad*, 57 N. H. 132 (24 Am. Rep. 59); *West* v. *Railway Co.*, 77 Iowa, 654; *Union Pacific R. Co.* v. *Arthur*, 2 Colo. App. 159. As is stated by the learned author in 3 Elliott, R. R. § 1238, there may be cases in which, after the property is set on fire by a railroad company, the owner, by a slight effort, could save it from destruction, and that such cases should be subject to a different rule. In such case, it might be said with much force that the damage does not directly result from the fire. But in this case we are dealing with the alleged precedent negligence of plaintiff,

and must hold that the defense is not available under the statute.

If the defense were available in any case, we should also be of opinion that no such act of negligence was shown in piling the lumber eight feet from the track. See *Stacy* v. *Railway Co.*, 85 Wis. 225; *Fero* v. *Railroad Co.*, 22 N. Y. 209 (78 Am. Dec. 178). We have not overlooked the cases cited by defendant's counsel. The case of *Ross* v. *Railroad Co.*, 6 Allen, 87, is negative authority. The court did not go out of its way to disapprove the holding of the court below. If it be treated as affirming the doctrine contended for, it is at variance with the New Hampshire and Iowa cases. The opinion in *Murphy* v. *Railway Co.*, 45 Wis. 222 (30 Am. Rep. 721), is able and exhaustive, but, so far as the case discloses, it rests on the common-law doctrine of negligence. We have been cited to no statute of Wisconsin, nor have we been able to find any, in force when the action in *Murphy's Case* arose, which bears on the subject. The case is not, therefore, an authority which aids us in placing a construction on our statute.

3. The fact appeared on the trial that the lumber consumed was insured. This did not affect the plaintiff's right to recover. *Perrott* v. *Shearer*, 17 Mich. 48; *Hagan* v. *Railroad Co.*, 86 Mich. 619. Obviously, therefore, the comment as to the amount of capital stock of the insurance company was untimely, and should have been omitted. We need not determine whether this comment was damaging error not cured by the charge, as the case must go back on other grounds.

Judgment reversed, and new trial ordered.

HOOKER and MOORE, JJ., concurred with MONTGOMERY, J.

GRANT, C. J. (*dissenting*). 1. Does 1 How. Stat. § 3378, abrogate the rule of the common law that he whose negligent act contributes to his own injury cannot recover damages from another whose negligence contributed to

the same injury? That rule of the common law is founded in sound reason and justice, and is the firmly-settled rule in this State. Attempts have been made to induce the court to depart from the rule on the ground of what is called "gross negligence" on the part of the defendant. The court, however, has steadily adhered to the rule, and the only departure or seeming departure from it has been in those cases where the act of the defendant has been willful in character, or was done intentionally and with knowledge of the danger to the plaintiff. The statute does not change the rule of the common-law liability for negligence. That rule of liability remains the same. If the defendant can show that it has exercised due care in the construction and management of its engines, the defendant is not liable. This has always been the rule, and the statute does not affect it. It was found difficult, and in many cases impossible, for the plaintiff to show what caused the fire to escape from the engine. Its construction and management were exclusively within the knowledge of the company. The reason and reasonableness of a law which would shift the burden of proof to those who had exclusive knowledge on the subject, and exclusive control and management of the machine which caused the damage, are apparent. Did the legislature intend to go further? It has not expressly done so. In order to sustain the contention of the plaintiff, we must find that it has done so by implication. Repeals of statutes by implication are not favored. Only when effect cannot be given to both statutes do courts hold that the latter repeals the former. If both can stand and be given any effect, courts have universally held that there is no repeal. In my judgment, the same rule should be applied in the construction of a statute claimed to abrogate a wise and beneficent rule of the common law. If both can stand and be given effect, both should be sustained. Applying that rule to the case before us, I do not think that the common-law rule is abrogated. There is nothing in this law to indicate that the legislature intended to abro-

gate the rule as to contributory negligence which was the settled law when the act was passed. Had it so intended, apt words to carry out such intention would naturally have been used. It is fair to infer that the legislature had in mind solely the injustice of the common-law rule as to the burden of proof, as applied to cases of this character. The decisions upon this subject are not harmonious, even under statutes which are somewhat similar to ours. In such case, authorities are of but little weight, and other courts must decide the case upon their own statutes, and upon what seems to them the correct rule of law.

Considerable reliance is placed upon *Laird* v. *Railroad*, 62 N. H. 254 (13 Am. St. Rep. 564). The court in that case based its decision upon the law of Vermont. The fact is noted that the statute of Vermont gives railroad companies an insurable interest in their own name upon property situated along their right of way. The statute in *Rowell* v. *Railroad*, 57 N. H. 132 (24 Am. Rep. 59), was the same. It is evident that the court placed considerable stress upon the fact that the statute gave railroad companies the right to insure the property of others situated along their right of way, and argue from that that it was the intention of the legislature to place railroad companies upon the same basis as insurance companies, and make them insurers against loss by fire. The chief justice in his opinion used the following language:

"Contributory negligence does not furnish any defense to any action by the insured on the policy of the insurance. By the statute, the proprietors are liable for all damages which shall accrue, etc., and have an insurable interest in all property exposed to such damage. Negligence, either of the railroad or of the landowner, would not, according to the authorities, be a defense to an action by the proprietors to recover on their policy the amount of the loss insured. It would be odd enough if the proprietors could recover on their policy, and then turn round and defeat the property owner on the ground of contributory negligence."

Whether the same result would have been reached in

the absence of this insurance provision is uncertain.    That
it was a potential, if not a controlling, factor, is evident.
In this connection we must remember the well-settled rule
that the decisions of courts must be read in the light of,
and oftentimes limited to, the facts of the particular case.
*Murphy* v. *Railway Co.*, 45 Wis. 226 (30 Am. Rep.
721).    At any rate, decisions of other courts in such
cases are not controlling with us, and are only valuable in
so far as they may contain reasons applicable to our stat-
ute.    The language of our statute imposing liability for
failure to give the signals is as imperative as is the lan-
guage in regard to. liability for fires;   the latter only
differs from the former in providing that the railroad
company may relieve itself from liability by showing that
it has used due diligence; yet in the former case, as already
shown, this court has uniformly sustained the defense of
contributory negligence.    *Grand* v. *Railroad Co.*, 83
Mich. 571 (11 L. R. A. 402).

The statute in regard to fencing by railroads, and liabil-
ity for failure to erect and maintain them, and the decis-
ions thereunder, have no application to this case.    There
is no liability at common law for failure to maintain
fences.    The liability therefor is purely statutory.    Be-
sides, the language of the statute in regard to fences is
very different from that now under discussion, and is so
strong as to leave no doubt of the intent of the legislature.
*Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510; *Neversorry* v.
*Railway Co.*, 115 Mich. 146.    The statute under which
these decisions were rendered is given in full in *Flint,
etc., R. Co.* v. *Lull, supra*.    The contributory negligence
relied upon was that the plaintiffs permitted their cattle to
run at large in the public highway, unattended.    It was
held that the statute was adopted as much for the protec-
tion of trainmen and passengers as for the protection of
property.    I do not think that those decisions affect the
question now before us.

As already shown, it must be clear that the statute
imposes this absolute liability, and takes away the com-

mon-law defense.   The distinction between statutes which impose this liability and those which do not is well illustrated by the statutes and decisions of the State of Iowa. Section 1289 of the Code of Iowa of 1873 provides that " every railway which fails to fence," etc., "shall be liable to the owner for any stock injured or killed by reason of the want of such fence, unless the damage was occasioned by the willful act of the owner, or his agent." It further provides that, in order to recover, the owner is only required to prove the injury or destruction of his property.   The last clause of the section reads as follows:

"And provided, further, that any corporation operating a railway shall be liable for all damages by fire that is set out or caused by operating of any such railway, and such damage may be recovered by the party damaged in the same manner as set forth in this section in regard to stock, except to double damages."

In *West* v. *Railway Co.*, 77 Iowa, 654, the court held that under this statute the liability was absolute, and that contributory negligence was no defense.   The liability for damages by fire is placed upon the same basis as that of liability from failure to fence.   It is difficult to see how the court could have held otherwise.

Section 1288 of the same Code provides:

"Every corporation constructing or operating a railway shall   *   *   *   construct at all points where such railway crosses any public highway good, sufficient, and safe crossings and cattle-guards;   *   *   *   and any railway company neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such neglect and refusal, and, in order for the injured party to recover, it shall only be necessary for him to prove such neglect or refusal."

A switchman was killed at the cattle-guard while engaged in switching cars.   The court, in *Ford* v. *Railway Co.*, 91 Iowa, 179 (24 L. R. A. 657), held that this statute did not take away the defense of contributory negligence. The court said:

"Under section 1288, a liability is fixed, and it provides what the party seeking to recover must prove in the first instance.  If, in such an action, the plaintiff establishes the neglect and refusal of the company to comply with the statute, and the fact that he has sustained an injury by reason thereof, he has made a case entitling him to recover, in the absence of evidence offered by the defendant; but it seems to us that the language used does not cut off the right of defendant to establish the fact, as a defense, that the injury was the result of the intestate's contributory negligence, or, in a proper case, the fact of independent negligence on his part, or any other defense it may have."

In *Ross* v. *Railroad Co.*, 6 Allen, 87, the statute imposed a liability for fire, as follows:

"When any injury is done to a building or other property of any person or corporation by fire communicated by a locomotive engine of any railroad corporation, the said railroad corporation shall be held responsible in damages to the person or corporation so injured; and any railroad corporation shall have an insurable interest in the property for which it may be so held responsible in damages, along its route, and may procure insurance thereon in its own behalf."  Stat. 1840, chap. 85, § 1.

It will be observed that the language is substantially the same as in our statute, except that it gives the railroad companies an insurable interest in property, while ours does not.  The case was tried upon the theory that contributory negligence was a defense.

The question was raised and decided in Arkansas under a statute similar to ours, and the defense of contributory negligence sustained.  *Tilley* v. *Railway Co.*, 49 Ark. 535.

Elliott recognizes that the decisions are not in harmony, even where there are no statutory enactments, and, after stating that where statutes impose an absolute liability the question of the owner's contributory negligence is immaterial, says: "We do not believe, however, that such a strict rule, even where there is an absolute statutory liability, is entirely just."  3 Elliott, R. R. § 1238.  This statement of the learned author is only material in showing

the care courts should exercise in determining whether the
statute abrogated this defense. Under the rule claimed,
a party may sit back, and deliberately see his property
destroyed, when by slight exertion he could arrest the fire.
So he may leave hay or other combustible material along
the defendant's right of way, at a farm crossing or else-
where, in a dry time, and recover damages if the combus-
tible material takes fire from an engine. Many other
illustrations will readily suggest themselves. Such a rule
is unjust, and courts ought not to hold that the legislature
intended to establish it, unless the language leaves no
other conclusion possible. It is sought to apply the rule
"*Expressio unius est exclusio alterius.*" I do not
think this a case for the application of that rule. The
legislature did not pretend to deal with the question of
contributory negligence, but was dealing solely with the
negligence of railroad companies.

2. Was there evidence of contributory negligence? The
jury, in reply to special questions, found that the lumber
was piled so close to the track that cars in passing struck
the ends of the piles, and that a communication was
addressed by the defendant company to the agents of
plaintiff upon the subject of this dangerous proximity.
Barrels of water kept upon the tops of the piles for use in
putting out incipient fires had been emptied, although
there was at the time no danger of their freezing up. One
witness testified that he looked for pails with which to get
water to put out the fire, but they had been taken away,
and the barrels were empty. He also testified that with
two pails of water he could, in his judgment, have put the
fire out when it was first discovered. This testimony, in
my judgment, made the question one of fact to be deter-
mined by the jury. Counsel cite cases where buildings,
built near the right of way, were burned. The courts
properly hold that their erection was a legitimate use of
one's own property, of which the owner could not be
deprived, and that in running their trains past them the
railroads were held to a greater degree of care. These

cases have no application where the use is merely temporary, and there was no occasion for piling inflammable material so near the track for the mere convenience in loading.  *Stacy* v. *Railway Co.*, 85 Wis. 225, is cited in support of plaintiff's position.  The trial court in that case set aside the special finding of the jury that the plaintiffs were guilty of contributory negligence, as clearly against the evidence.  The jury, however, having found that the defendant was not guilty of any negligence, this finding became immaterial; but the appellee sought to sustain the judgment upon this finding by the jury.  Upon this point the appellate court said :

"There was little evidence on this subject beyond the statements in the complaint, referred to, and the fact, which is of common knowledge, that the grounds around this, as all other such mills, are to a considerable extent covered with sawdust, and some testimony that edgings and *débris* to some extent had accumulated under the tramway,—a necessary result, to some extent, in the operation of any such mill.  There is nothing to show that there was an unusual or dangerous condition of affairs in these respects, or that the plaintiffs were guilty of any specific act or omission of a negligent character, or that they failed to provide and keep means for the prompt extinguishment of incipient fires."

The court further stated that the trial court had better means of forming a correct judgment upon this question than had the appellate court, and they therefore regarded the judgment of the lower court upon this point as controlling, and practically setting aside the finding.  That was not a case of piling lumber near the track.  There was a tramway between the piles of lumber and the track, the tramway being a few feet from the track, the exact distance not being stated.

I think the question of contributory negligence was properly submitted to the jury.

3. Certain insurance companies, having policies upon this lumber, had paid plaintiff the full amount of the insurance, which covered nearly the entire value of the

property. This suit was brought by these insurance companies in the name of the plaintiff. This they had a perfect right to do. Error is assigned upon the admission of testimony tending to show who were the real plaintiffs, and the remarks of counsel thereon. This fact first appeared in the case upon the examination of jurors as to their competency. It was certainly proper to examine these jurors as to their relations with these companies, and to ascertain if they had any interest in them. It was therefore impossible to keep the fact from the jury. The court, in the most emphatic language, instructed them that this action was properly brought, that they must dismiss from their minds all consideration of the question of insurance, and must give the full value of the lumber, regardless of the insurance, if the defendant was liable. Under this state of facts, I think that the appellate court should assume that the jury followed the instructions. I see no reason for assuming that jurors are inclined to be prejudiced in favor of railroad companies as against insurance companies. Be this as it may, the fact was necessarily before the jury, and the court did all that could be done to prevent any prejudice on the part of the jurors.

I think the judgment should be affirmed.

LONG, J., concurred with GRANT, C. J.