OKEMOS ELEVATOR COMPANY v. CONSUMERS POWER COMPANY.

1. ELECTRICITY—STORMS—NOTICE OF BROKEN HIGH-VOLTAGE WIRE.
   Power company, whose high-voltage electric wire became broken during a devastating storm and came into contact with lower voltage wire servicing plaintiff's elevator was entitled to a reasonable length of time in which to cut the wire.

2. SAME—BROKEN HIGH-VOLTAGE WIRE—NOTICE—QUESTION FOR JURY.
   In action against power company for loss of grain elevator during a devastating storm, due to contact of broken high-voltage electric wire with low-voltage wire servicing plaintiff's elevator, evidence presented question for jury as to whether or not defendant, after notice of the broken wire and consequent danger had a reasonable opportunity to cut the wire and prevent the fire.

3. PARTIES—TORTS—JOINDER OF INSURER OF PART OF FIRE LOSS—WAIVER.
   Action for loss of elevator by fire could be maintained by insured without joining insurer which paid for loss to extent

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am. Jur., Negligence, § 59.
[2] 38 Am. Jur., Negligence, § 220.
[4] 15 Am. Jur., Damages, § 202.
[4] Insurance on property as precluding or reducing recovery of damages from one responsible for loss of or injury to such property. 81 A.L.R. 320.

of its insurance policy, waived all rights of subrogation and agreed that insured could prosecute action against defendant power company whose negligence caused the fire without joining the insurer.

4. DAMAGES—TORTS—INSURANCE—FIRE LOSS.

Where undisputed competent testimony showed that plaintiff's loss of its elevator by fire due to negligence of defendant power company was greater than the combined amount of jury's verdict against the defendant and insurance paid by insurer and verdict was not sought to be set aside as inadequate, defendant was not entitled to a credit for the amount of insurance paid to plaintiff.

5. ELECTRICITY—NEGLIGENCE—VERDICT—EVIDENCE.

In action against power company for loss of elevator due to negligent delay in cutting high-voltage wire that had been broken during a storm and had contacted low-voltage wire servicing plaintiff's elevator, substantial evidence supported verdict for plaintiff.

6. APPEAL AND ERROR—NEGLIGENCE—VERDICTS—GREAT WEIGHT OF EVIDENCE.

Verdict for plaintiff in action against power company for loss of elevator due to defendant's negligence *held,* not against the great weight of the evidence.

Appeal from Ingham; Hayden (Charles H.), J. Submitted October 7, 1948. (Docket No. 62, Calendar No. 44,206.) Decided December 17, 1948.

Case by the Okemos Elevator Company against Consumers Power Company, a Maine corporation, for damages suffered when plaintiff's elevator was consumed by fire. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Fred C. Newman, Jr.,* for plaintiff.

*Shields, Ballard, Jennings & Bishop,* for defendant.

Reid, J.   Plaintiff began this suit against defend-ant Consumers Power Company, a Maine corporation, because of the loss by fire of plaintiff's elevator, which plaintiff claims was occasioned by the negligence of defendant. From the judgment consequent upon the jury's verdict, favorable to plaintiff for $18,000, defendant appeals.

The Okemos Elevator Company, plaintiff, on March 25, 1947, owned a grain elevator at Okemos, Michigan, managed by John Whitmyer. On that date the grain elevator was destroyed by fire as a result of a 4,800-volt primary wire coming in contact with a 220-volt secondary wire, thus transmitting 4,800 volts through the secondary and service wires into the switch box located inside the elevator, and by reason of consequent overheating, causing destruction by fire of the elevator. Suit was begun by plaintiff against the defendant to recover the entire loss caused by the fire.

Beginning on the evening of March 24, 1947, and continuing through March 25th (the date of the fire), central Michigan, including the Okemos area, experienced a devastating storm, which began with a light rain the evening of March 24th, finally terminating in snow before midnight. The snow was wet and heavy, rendering many public highways impassable so that school busses did not run on March 25th. Along with the snow there were high winds and gusts.

The elevator in question was located one mile south of the village of Okemos at the junction of the Pere Marquette railroad and the Okemos-Mason road, which road runs north and south through Okemos from US-16 to Mason, and vehicles passed through on that road at intervals during the forenoon of the day in question. The elevator and its contents were a total loss. The total value of building and contents was claimed to be approximately

$35,000. The buildings were insured by the Michigan Millers Mutual Fire Insurance Company, who paid the full amount of the policy, $14,600. The insurance company gave to plaintiff a subrogation release.

There was testimony that the fire was first discovered some time between 12 noon and 12:30 p.m. on March 25th. There was some testimony to show that as early as 9:30 a.m. the defendant had received notice at its office that a primary wire at or near the elevator had broken and that the end was hanging clear down to the ground and lying on the ground 8 or 10 feet, was "arcing" and fire was coming from it and that it would endanger some one's life, that there was a grave emergency on account of the broken wire, and that the overcharged wire was menacing Whitmyer's house, which was near the elevator. Defendant company was informed of the direction from the elevator that the wire was down.

The testimony further showed that the primary wire in question, carrying 4,800 volts, was suspended from the upper brackets near the top of poles and that there was a secondary wire underneath which was intended to carry only about 220 volts and that the primary wire, upon being broken, probably would come in contact with the secondary wire and that in consequence high voltage would be carried into the secondary wire. The secondary wire furnished current for the operation of the elevator in question. It is conceded by the defendant that the contact of the high-voltage wire of 4,800 volts with the secondary wire normally carrying only 220 volts, caused the overheating of the switch box and the fire in the elevator consequent thereupon.

Defendant's witness Gronseth testified:

"A circuit can be broken at the generating station, at the substation, or at disconnect points which you

have along the line, at corners in the line such as dead ends, or the line can be cut at any pole."

It is to be considered that seasonably cutting the wire at any one of the five points thus indicated would have cut off the current running into the elevator and prevented the fire. Important for the jury to consider was the reasonable opportunity, if any, of the defendant to cut the wire in question at the pole and thus not interrupt the defendant's service to other customers. Whitmyer testified that when he first knew that the wire was down, he threw the switch in the elevator.

Defendant claims that its wires were in proper and safe condition and that it had no opportunity after learning of the wire being down to reach the scene and cut the wire, in time to prevent the fire. Defendant also claims that there is not a proper party in interest.

Defendant made an extensive showing as to the difficulties in maintaining its service upon the night and forenoon in question, of the great number of calls upon its service men, and that its service men had been without food and without sleep continuously from about 9 o'clock in the evening of March 24th, and during the forenoon of March 25th.

Only men who were specially trained could safely cut the high-voltage wires.

Harry Bowerman, division engineer and witness for defendant, testified, among other things:

"I got a report that there was a wire down to the Okemos elevator from Mr. Southworth. I believe I got more than one report on that, I'm not positive. That was some time between 10 and 10:30 in the morning of the 25th. [Plaintiff's witnesses testified to an earlier time in the day.] When I learned this, I knew that there was a service crew proceeding from a location at Towar Gardens through to the

Meridian substation, with instructions to call as soon as they reached the Meridian substation. I instructed crews, when they went out, to report back immediately by telephone, always. So I always had them spotted. We tried to keep in touch with them so they wouldn't be out more than two hours without contact.

"This crew was supposedly proceeding between Towar Gardens and Meridian substation, and *for that reason* we dispatched no one from Lansing to the Okemos elevator at that time. At the same time, or approximately the same time this call came in from the Okemos elevator with regard to a wire down, we received this report from the electrician at the State laboratory that he definitely knew that there was [a] primary down and burning in the front yard of the State garage." (Italics supplied.)

Mr. Blinn, employee and witness for defendant, testified:

"We received our orders to go to the Park Lake road and Lake Lansing road to try and close the Bath circuit. We started, went in by way of Abbott road, down Lake Lansing road, and we got to our point of switching. We closed the switch, and we left immediately, back to the telephone. About that time it was getting around 11, 11:30 in the forenoon. I asked Mr. Bowerman if we could come in. We hadn't had a thing to eat since 9 o'clock that night. So he says, 'Yes, come on in,' and we did, and he immediately sent us out to lunch."

The jury could have fairly inferred from the testimony of witness Bowerman that the reason he did not immediately send a crew to the elevator upon learning of the broken wire was that he desired that the crew that he expected to report within an hour should be the crew that would cut the broken wire in question. The jury could have further found that if Bowerman had not been waiting for the crew in

question to report to him, he could have sent another crew. It was for the jury to say whether under all the circumstances shown in the record, Bowerman's action was that of an ordinarily careful and prudent person. Defendant was entitled to a reasonable length of time in which to cut the wire.

The jury could have found from the testimony that after receiving notice of the wire being broken and consequent danger, the division engineer's office had more than two hours before the fire started to get a crew from Lansing to the pole where the wire could be cut, a distance of approximately 6½ or 7 miles. Defendant's witness Blinn testified it took about 45 minutes for his crew to make that drive. The jury could have found that US–16 from Lansing to the Okemos-Mason road was open and that the Okemos-Mason road was open from US–16 to the elevator.

A careful reading of all of the testimony in the case convinces us that there was testimony sustaining a conclusion on the part of the jury that after defendant had knowledge of the dangerous condition it was fairly and reasonably within the power of the defendant, if it had used its available crews as speedily as reasonably possible, to have seasonably cut the wire in question and thus have prevented the fire at the elevator. This was a jury question. We must conclude that the jury found that defendant was negligent in not seasonably cutting the wire in question.

Defendant claims that the insurance company which carried the insurance on plaintiff's property to the amount of $14,600 and paid that amount of insurance to plaintiff, became a real party in interest, and that the present suit cannot be maintained without joinder of the insurance company as a coplaintiff or as the sole plaintiff. Plaintiff never assigned to the insurance company any part of its

claim against defendant and was not obligated so to do, under the policy of insurance or otherwise. The insurance company paid the loss to the extent of its insurance policy and also made an agreement with plaintiff dated June 12, 1947, waiving all rights of subrogation and agreeing that the plaintiff could prosecute suit against defendant without joining the insurance company. The agreement also contained the following provision:

"Party of the second part agrees to pay to party of the first part the difference, if any, between the amount of damages it may recover from Consumers Power Company and the sum of its uninsured loss plus its attorney fees which are to be determined pursuant to a certain agreement entered into by party of the second part and its attorney, Frederick C. Newman, Jr., on May 27, 1947."

Defendant was not entitled to a credit for amount of insurance paid to plaintiff. *Perrott* v. *Shearer*, 17 Mich. 47, 55; *Hagan* v. *Railroad Co.*, 86 Mich. 615; *Peter* v. *Chicago & West Michigan Railway Co.*, 121 Mich. 324 (46 L. R. A. 224, 80 Am. St. Rep. 500).

The testimony is all one way, that plaintiff's loss was greater in actual fact than the total of the verdict plus the insurance. Plaintiff does not ask that the verdict be set aside as inadequate.

There was substantial evidence to support the verdict. The verdict is not against the great weight of the evidence.

We have examined the errors alleged as to instructions to the jury and find no error therein. Judgment affirmed. Costs to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.