## The Flint & Pere Marquette Railway Company v. Charles A. Lull.

*Statute construed : Fencing railroads : Cattle : Presumptions : Exceptional cases : Evidence.* In an action to recover the value of a cow killed by a railroad train in a small hamlet, it will not be presumed, in the absence of evidence, that any reason of public or private convenience prevented the application of the general statute *(Sess. L. 1873, p. 72)*, requiring every railroad company to fence their track and put cattle-guards at highway crossings, and in default thereof making them liable for all damage done to cattle, etc., thereon ; any exceptional case must be proved by the party claiming a benefit therefrom.

*Statute construed : Fencing railroads : Streets and alleys : Depot grounds : Public convenience.* The statute does not apply to crossings of streets and alleys of a city or town, or shipping places in front of mills, etc., or depot grounds, etc., for reasons of public convenience.

*Contributory negligence.* In an action under this statute negligence of the plaintiff in the care of his property, contributing to the injury, constitutes no defense. .

*Submitted on briefs January 9. Decided January 13.*

Error to Saginaw Circuit.

*William L. Webber,* for plaintiff in error.

*D. W. C. Gage,* for defendant in error.

COOLEY, J.

Lull sued the railway company to recover the value of a cow killed by one of its trains passing through the village of Bridgeport. The right of recovery is based upon an amendment to section thirty-six of the general railroad act approved March 29, 1872 (*Laws 1872, page 72*), which reads as follows:

"SEC. 36. Every railroad company formed under this act, and every person or corporation owning or occupying any such railway, shall erect and maintain fences on the sides of their respective roads, of the height and strength of a division fence required by law, with suitable openings and gates or bars therein, convenient for farm crossings of the road, for the use of the proprietors of the lands adjoining such railway, or, in lieu of such fences, shall make ditches or other obstruction that would be equivalent to such fences, for the protection of such adjacent proprietors, and shall also construct and maintain cattle-guards at all road crossings, suitable and sufficient to prevent cattle and other animals from getting onto such railway. The sufficiency of such fence, ditch, or other obstruction in lieu of a fence, may be determined by the proper fence-viewers; and the provisions of law relating to partition fences shall apply to railroad fences, except that the company shall build and maintain the entire fence, ditch, or other obstruction at its sole expense. Until such fences and cattle-guards or ditches shall be duly made, such company, person, or corporation,

while operating its road, shall be liable for all damages done
to cattle, horses, or other animals thereon, and all other
damages which may result from the neglect of such com-
pany, person, or corporation to construct and maintain
such fences, and cattle-guards, or ditches as aforesaid, and
after such fences and cattle-guards or ditches shall be duly
made and maintained, such company, person, or corporation
shall not be liable for any such damages, unless negligently
or willfully done; and if any person shall ride, lead, or
drive, or intentionally permit any horse or other animal
upon such road and within such fences and cattle-guards
or ditches, other than at farm crossings, or shall injure or
destroy or make openings or passages through or over such
fences, cattle-guards, or ditches, without the consent of such
company, person, or corporation, he shall for every such
offense be liable to a fine not exceeding one hundred dol-
lars, or imprisonment for a term not exceeding three months
in the county jail, or both such fine and imprisonment, in
the discretion of the court, and shall also pay all damages
that shall be sustained thereby, to the party aggrieved."

The evidence on the trial showed that just after dark,
and about an hour before the injury to the cow occurred,
on the evening of August 7, 1872, the cow was turned into
the street by the plaintiff's servant to keep her away from
her calf during the night, and allow her to go the river for
water, and that plaintiff's cattle to get to the river were in
the habit of crossing defendant's railway at or near the
point where the injury occurred. The defendant conceded
that at the time of the injury there was no cattle-guard
on the railway on the south side of the highway crossing
defendant's road at Bridgeport at or near which the injury
occurred, and no fence on the east side of the railway
between such crossing and the river, and that plaintiff was
then the owner and occupant of the land on both sides of
the railway between such crossing and the river. The
jury found that the cow was killed on the railway track
south of the highway.

On behalf of defendant the circuit judge was requested to charge the jury that if the cow was at large unattended in the highway near the railway crossing, and if she strayed from the highway upon the railway track, although the company may have been at fault in not having a sufficient cattle-guard or fence at that place, yet the plaintiff's negligence in allowing the cow thus at large near a railway crossing will prevent a recovery in this action. This request was refused, and the judge on the contrary instructed the jury that the liability of the defendant is absolute, if the cow passed upon the railroad track in consequence of the neglect of defendant to have there a sufficient cattle-guard to prevent her passing from the highway upon the track, or if she passed upon the track where there should have been a fence, and it is conceded there was none; and that if she was killed on the track south of the highway their verdict must be for the plaintiff without regard to any other question. The jury accordingly found for the plaintiff.

It is now contended, on behalf of the railway company, that the obligation under the statute to fence its track and put in cattle-guards has no application to that portion of its road within the limits of a city or village. This argument is based upon reasons of public convenience, and also upon certain authorities which are supposed to establish the rule contended for under statutes somewhat similar.

In *Lafayette, etc. R. R. Co. v. Shriner, 6 Ind., 141*, it was held that a statute making railroad companies liable for stock killed by their cars, where the company had neglected to fence their road, had no application to a case where the injury occurred at the crossing of a public street; the company having no right to fence at that point. In *Indianapolis, etc. R. R. Co. v. Kinney, 8 Ind., 402*, a more general doctrine was laid down, that the company would not be liable to pay for stock running at large and killed on the track at a place which ought not to be fenced; as for example, the space in front of a mill left open for the con-

venience of shipment at that point. These cases were followed in *Davis v. Burlington, etc. R. R. Co., 26 Iowa, 549*, and the company held not liable for injuries to cattle occurring on their unfenced depot grounds. In the subsequent case of *Durand v. Chicago, etc. R. R. Co., 26 Iowa, 559*, the court went farther, and held the statute to have no application within the limits of a platted town. It would have been more satisfactory if in this case the court had assigned the reasons which brought them to this conclusion, and not contented themselves, as they did, with a mere reference to their former decision, which seems to us to stand upon impregnable grounds without furnishing much support to the sweeping conclusion of the subsequent case. No statute could be held to require railway depot grounds to be fenced without a very clear declaration to that effect, not only because such fencing is unusual, but because the convenience of the company, as well as of the public in transacting business with it, would be very seriously incommoded by such fencing, and the track of the company can be better protected, and with less impediment to business at such points, by other methods than fencing. A more satisfactory rule appears to us to be laid down in *Indianapolis, etc. R. R. Co., v. Parker, 29 Ind., 471*, in which the court say that while the statute requiring fences has no application to points where it would be illegal or improper that roads should be fenced, such as the crossings of streets or alleys in a city or town, or at mills, etc., where public convenience requires the way to be left open; yet that this is the limit of the exception, and the track within the corporate limits of a city or town at points where no such reasons apply, is as much within the statute as the track elsewhere. This decision was followed in *Jeffersonville, etc. R. R. Co. v. Parkhurst, 34 Ind., 501*.

The village of Bridgeport is a small hamlet, and there is nothing in the evidence to show that any reason of public or private convenience required the highway near the plaintiff's house to be left without cattle-guards, or the

track on the south side thereof to be left unfenced. Any exceptional case should have been proved by the railway company, and as none was proved we cannot infer its existence. We must suppose the reasons which in the opinion of the legislature required these securities generally, applied here as much as elsewhere.

There still remains the question, however, whether the railway company could be held liable if the plaintiff himself was guilty of contributory negligence. Were this a common-law action it is clear that such contributory negligence would be a defense.—*L. S. & M. S. R. R. Co. v. Miller, 25 Mich., 274; Corwin v. N. Y. & Erie R. R. Co., 13 N. Y., 46.* But this is not a common-law action. It is an action given expressly by a statute, the purpose of which is not merely to compensate the owner of property destroyed for his loss, but to enforce against the railway company an obligation they owe to the public. The statute is a police regulation, adopted as much for the security of passengers as for the protection of property.—*Corwin v. N. Y. & Erie R. R. Co., 13 N. Y., 46; McCall v. Chamberlain, 13 Wis., 637; Indianapolis, etc. R. R. Co. v. Marshall, 27 Ind., 302; Jeffersonville, etc. R. R. Co. v. Nichols, 30 Ind., 321; Same v. Parkhurst, 34 Ind., 501.* And the decisions may almost be said to be uniform that in cases like the present, arising under such statutes, the mere negligence of the plaintiff in the care of his property can constitute no defense.—*Corwin v. N. Y. & Erie R. R. Co., 13 N. Y., 42; Indianapolis, etc. R. R. Co. v. Townsend, 10 Ind., 38; Indiana Central R. W. Co. v. Leamon, 18 Ind., 175; McCall v. Chamberlain, 13 Wis., 637; Horn v. Atlantic, etc. R. R. Co., 35 N. H., 169; Indianapolis, etc. R. R. Co. v. Parker, 29 Ind., 472; Jeffersonville, etc. R. R. Co. v. Nichols, 30 Ind., 321.* Indeed, if contributory negligence could constitute a defense the purpose of the statute might be in a great measure, if not wholly, defeated, for the mere neglect of the railway company to observe the directions of the statute would render it unsafe for the owner of beasts to suffer them to be at

large or even on his own grounds in the vicinity of the road, so that if he did what, but for the neglect of the company, it would be entirely safe and proper for him to do, the very neglect of the company would constitute its protection, since that neglect alone rendered the conduct of the plaintiff negligent.

The judgment must be affirmed, with costs.

CAMPBELL, J., and GRAVES, CH. J., concurred.

CHRISTIANCY, J., did not sit in this case.