GEORGE McDONALD v. CHICAGO & NORTHWESTERN RAILWAY
COMPANY.

*Railways—Injuries to animals on track—Sufficiency of averments in
pleadings—Inadequate force of brakemen—Reckless management.*

A declaration against a railway company for the killing of animals that
had got upon the track through the company's neglect to keep the
side fencing in repair, averred that defendant "so carelessly and neg-
ligently ran, conducted and directed the locomotive and train" that
they struck and killed the animals "so being on the railroad as-
aforesaid by and through the neglect of the defendant to keep in re-
pair the fences as aforesaid and through the gross neglect and reck-
less conduct of the servants and employees of defendant on said loco-
motive in running down said animals," etc.   *Held* that as it was not
claimed on the trial that the averment was so general that no evidence
could be received in support of it, the jury was entitled to consider'
any evidence that was admitted without objection and tended to
prove the main allegation; and if sending out a train without
enough brakemen to keep it under control had any such tendency,
this fact could be relied on as well as reckless conduct in the con-
ductor or engineer at the time of the injury.

Sending out a train with so few brakemen that on some grades its speed
cannot be checked, cannot be *held*, as a matter of law, to have no
tendency to support an allegation of reckless management; nor can
the neglect be *held* to be of one degree rather than another; if there are
special circumstances tending to excuse such management, they are
for a jury to weigh.

Error to Marquette.  (Grant, J.)   Oct. 11.—Oct. 31.

CASE.   Defendant brings error.   Affirmed.

*A. B. Eldredge* and *B. C. Cook*, for appellant, cited as
similar cases, *Fisher v. Farmers' Loan & Trust Co.* 21
Wis. 73, and *Darling v. Bost. & Alb. R. R.* 121 Mass. 119.

*W. P. Healy* for appellee.

COOLEY J.   The declaration in this case contains a single
count, which is as follows :

"For that whereas, on the 1st day of June, 1882, and

from thenceforward to the commencement of this suit, the defendant was possessed and had the entire control of the Peninsula division of the Chicago & Northwestern Railway, in the city of Negaunee aforesaid, and had the right to run upon the same locomotives and trains of cars. And the plaintiff avers that during all that time it was the duty of the defendant to erect and keep in repair fences on the sides of said railroad, suitable and sufficient to prevent cattle, horses and other animals from getting on said railroad, except at crossings and other public places. Nevertheless the defendant neglected to keep said fences in repair, as by the statute in such cases made and provided it was its duty to do, nor did said defendant build or maintain ditches or other obstructions equivalent to fences for keeping off animals from said track, by means whereof two horses and one mare, the property of the plaintiff, of great value, to-wit: of the value of seven hundred dollars, on the 16th day of June, 1882, near the western limits of the city of Negaunee aforesaid, strayed and got on said railroad, but not at any crossing or other public place, and that the defendant by its servants on the day last aforesaid so carelessly and negligently ran, conducted and directed the locomotive and train of the defendant on said railroad, that the said locomotive and train struck with great force and violence and then and there killed the said two horses and mare so being on the railroad as aforesaid, by and through the neglect of the defendant to keep in repair the fences as aforesaid, and by and through the gross neglect and reckless conduct of the servants and employes of defendant on said locomotive in running down said horses and mare after they were seen by said servants and employes on said railroad track, the said horses and mare having run a distance of nearly half a mile on said track ahead of said locomotive, until stopped at a culvert or cattle-guard, and were there recklessly run down and killed, as aforesaid, to-wit: at the county aforesaid, to the damage of the plaintiff of seven hundred dollars, and therefore he brings suit," etc.

On the trial plaintiff proved that in June, 1882, he was the owner of the horses in question, and resided in Negaunee. The horses were at large, and he sent his servant, one Adams, after them. Adams found them at Ishpeming, and started with them for home. The testimony of Adams, so far as we deem it necessary to give it, is as follows:

" I was sent after these horses and found them up at Ishpeming, and was bringing them home. The horses was feel-

ing good, and I had to go the way they went after them.
They went on the north side of the track, going through an
open field.   I should judge it was a quarter of a mile from
the track, and they got wild and galloped off right towards
the track, and they came down to where the fence was down
and went in.  I rode in and tried to head them off, but failed,
and tied my horse to the first place I could tie to, and went
after them on foot, and then I heard the train coming when
I started on foot.   The train was coming very close.  There
was a man going up the track, and he headed the horses off,
and got the horses off all right.  They went on quite a ways
again and got on the track a second time, and that is the
time they were killed.   The fence where the horses got in
was down in three places, I should judge 20 or 30 feet apart.
The opening, I should judge, there was ten or twelve feet.
When the man turned the horses off the track they were
within the fence and it was fenced up close and the horses
had no chance to get away from the track, and there was a
little knoll that come right out to the edge of the track,
and that is what threw them on the track the second time.
The train which come along was a loaded ore train, I should
judge about 30 cars.  I did not see the horses struck, but I
saw them go into the air.   I was standing about half way
between the junction of the two tracks and the culvert.  This
was about half past eleven in the forenoon.   I was riding
one horse and driving four.   All the land where the three
openings in the fence were was pasture.   To get into the
pasture I opened a gate in the corner.  As soon as I opened
the gate the horses galloped off.  I was from fifty to seventy-
five yards behind them.    When they started off I went after
them.   I could not see the openings.  It must have been
nearly a quarter of a mile from the corner where I got into
the pasture to the openings.   I did not try to prevent their
getting out of the field, because I did not know they could
get out of the field.   I did not know that there were any
openings. They were right at the openings when I saw they
could get out of the field and I was about 50 or 75 yards
behind."

The defendant put in evidence tending to contradict that
of Adams, and to show that he purposely drove the horses
upon and along the railroad track, and that they did not es-
cape upon it as he testified.   The engineer upon the train
was also sworn, and gave evidence as follows:

"When I saw the horses I called for brakes the first thing.

I was going about twelve miles an hour when I first saw them, and the train instead of letting up the speed increased a little down the hill. No matter how many brakes you would have on there, there is no two brakesmen could check a train down that hill. I had shut off steam before I saw them. The brakesman set the brakes when I whistled, and he had the brakes set before I called. I know it because we always do in order to keep the train together. I saw him set brakes after I signaled; he must have had twenty brakes set. I sounded my whistle for brakes, and blew several short blasts for alarm. I thought may be it would frighten the horses off. I did not reverse my engine, because if I did the slack would have been so quick the pins would jump out and break the train in two. The effect of that would be that there would be part of the train with no brakesmen, and they would go running into the head end. It would be dangerous, and dangerous for me to do it. I did all possible with safety. I could not have stopped the train any way between the hill and the crossing. It is the worst grade on the road. I can run from there to Goose lake, about seven miles, without steam. I had two brakemen. I think I was running about ten miles an hour when I struck the horses."

Upon this, and other evidence which tended to show that the train was going much faster than the engineer estimated, the plaintiff claimed that the jury would be warranted in finding that defendant was running its train at this point recklessly; the provision of brakemen being entirely inadequate, and insufficient for careful management, even if they exercised the utmost vigilance. The defendant on the other hand contended that the question of a sufficiency of brakemen was not in the case; there being no allegation in the declaration on the subject. Also that there was no evidence in the case tending to show recklessness on the part of the defendant or its employees contributing to the injury, and that the court should so instruct the jury.

The trial judge instructed the jury that the statute made it the duty of defendant to keep its track fenced, and if that duty was neglected and plaintiff's horses went upon the track in consequence, the defendant would be liable for the resulting injury even though Adams may have been negligent in suffering them to escape. If however Adams pur-

posely drove the horses upon the track, then the defendant is not liable, unless there was gross and reckless misconduct in the management of the train.    Proof of gross and reckless mismanagement must be made by the plaintiff : it cannot be inferred.   Attention was called to the speed at which the train was running, but the jury were told that the defendant had a right to run its train along this track at whatever speed it saw fit, so long as it was not dangerous.   The number of brakemen upon the train might be taken into consideration, and the jury might ask themselves the question whether the evidence tended to show that two brakemen, with the assistance of the conductor—if he did assist—were sufficient.

The jury under the instructions returned a verdict for the plaintiff for the value of the horses, and the defendant has brought error.

We do not think the trial judge committed any error in submitting to the jury the evidence respecting the insufficiency of brakemen.    The defendant was charged with reckless conduct in the management of its train, whereby the injury was caused; and it was not claimed on the trial that the averment was so general that no evidence could be received in support of it.   If that claim had been made, possibly an amendment might have been permitted ; but under the declaration as it stood, any evidence which was admitted without objection, and which tended to prove the main allegation, the jury were entitled to consider.   If sending out an insufficiently manned train would have such a tendency, it was as competent to rely upon it, as upon reckless conduct in the engineer or conductor occurring at the time of the injury.   The case of *Marquette etc. R. R. Co. v. Marcott* 41 Mich. 433, to which our attention is called, is quite different.    There was a variance in that case between the declaration and the proofs, and the objection was distinctly taken in the trial court.   In this case no variance is complained of, nor was objection made that the allegations of the declaration were wanting in particularity.

It seems to have been conceded on the part of the defense

that even though Adams drove the horses upon the track purposely, the defendant would be liable if the reckless management of the train caused the injury.   Under that concession the instructions were given; and we do not see how the trial judge could have been warranted in saying to the jury that the sending out of a train with so light a force of brakemen that at one point in the line it would have been impossible for them to check in any degree the speed of the train, could have no tendency to support an allegation of reckless management.   Prudent management would seem to require that careful provision be made for bringing the train under control whenever occasion should arise for it; and if injury resulted from the neglect of such provision, it cannot devolve upon the court to say, as matter of law, that the neglect was of one degree of culpability rather than of another.   The attendant circumstances might have much to do with this; excuses might be made upon special facts; but these would present questions of fact, not of law. And if it was claimed that this particular grade was so exceptional that it was excusable to suffer trains to pass down it without effectual check, the jury must judge of the claim, not the court.

The errors assigned are not tenable, and the judgment must be affirmed with costs.

The other Justices concurred.