FULLER *v.* LAKE SHORE & MICHIGAN SOUTHERN RAIL-
WAY CO.

1. RAILROAD COMPANIES—NEGLIGENCE—CATTLE GUARDS.
   A railroad company is not guilty of negligence as to its em-
   ployés in maintaining a cattle guard at a point where its
   ordinary right of way joins its station grounds.

2. SAME—INJURY TO EMPLOYÉ—ASSUMPTION OF RISK.
   A brakeman assumes the risk of coupling and uncoupling
   cars at a cattle guard, where such guards exist at intervals
   over the entire road.

3. SAME—WING FENCES.
   A railroad company owes no duty to its employés to build
   fences from its cattle guards to the line fence, in order to
   advise them of the presence of such guards,—especially where
   the guard is plainly visible, and is located at a place where,
   by common experience, it may well be expected.

Error to Lenawee; Lane, J.   Submitted March 3, 1896.
Decided March 24, 1896.

Case by Lura Fuller, administratrix of the estate of
Albert Fuller, deceased, against the Lake Shore & Michi-
gan Southern Railway Company, for negligently causing
the death of her intestate.   From a judgment for defend-
ant on verdict directed by the court, plaintiff brings error.
Affirmed.

*Watts, Bean & Smith,* for appellant.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-
Danner,* of counsel), for appellee.

HOOKER, J.   The plaintiff's intestate was injured, and
died, by reason of stepping into a cattle guard while en-
gaged in an attempt to uncouple cars in a train upon
which he was brakeman.   This action was brought to

recover damages, upon the ground that the defendant negligently maintained " a dangerous pitfall, *i. e.*, a culvert 20 inches deep, partly covered with timbers, but leaving openings 6 inches wide between said timbers, upon its track." The circuit judge directed a verdict for the defendant, and the plaintiff appealed.

Counsel for the plaintiff concede that, if the law required the defendant to maintain the pit at that place, the plaintiff should not recover. The pit was a cattle guard. The law requires the railroad company to maintain fences between its right of way and adjoining lands, excepting, only, station grounds. It also requires the maintenance of cattle guards at highway crossings. This cattle guard was not placed at a highway crossing, but was 400 or 500 feet south of Hamilton street, at a point where the ordinary right of way joined the railroad station grounds, which were much wider than the space used for the main track farther south. Without such cattle guard, there would have been nothing to prevent cattle from straying from the streets upon the station grounds, and thence south upon the track. The defendant was obliged to fence its right of way from the point where this cattle guard was built. To have left it without a cattle guard would have left a narrow pocket, 500 or 600 feet long, into which animals might freely enter, and from which they could not escape at any other point. The obvious intent of the legislature, in providing for fences and cattle guards, is to exclude animals from entering upon the track. The fence keeps them from entering from adjoining premises; the cattle guards, from entering from the highways. But station grounds are exempt, for the general convenience of the company and the public. And, as cattle guards would be useless at streets crossing station grounds, it is the uniform custom, as all know, to locate them upon the boundaries of station grounds instead, as was done in this case; and we think it right and proper that this should be done. Within reasonable

bounds, a railroad company may extend its station grounds, and, ordinarily, the limits fixed by the company must govern. In this case they were plainly fixed at this point, and we think it was not negligence to construct a cattle guard there, and there is force in the claim that it was a duty.

Again, the undisputed proof shows that this accident occurred before 5 o'clock on a day in May; that the fireman upon the engine could distinguish the deceased, and see his legs and hand as he walked, while watching to take signals from him. He had walked by this cattle guard, in close proximity to it, three or more times, while engaged in switching that day. He threw the switch which was near to the cattle guard, being only 33 feet distant, that the train might back onto the main track; and, if he did not see the cattle guard, he was heedless in the extreme. It was his duty to take notice of the track upon which he was at work, and we have no doubt that he was aware of the existence of the cattle guard; but, whether he was or not, cattle guards were required by law, and existed at intervals, from one end of the road to the other. They were common incidents and hazards of his employment, and we must hold that he assumed the risks attendant upon them when he entered the service of the defendant. He entered between the cars, a few feet from this cattle guard, while they were in motion. Experiencing difficulty in lifting the pin, he walked along between the cars until his more watchful companions, expecting, momentarily, to see him emerge to avoid the cattle guard, stopped the train, lest he be hurt; but, as it proved, it was a moment too late. This is one of those unfortunate casualties, attendant upon railroading, which, as yet, no adequate means has been found to prevent. The learned circuit judge took this view of the case.

A point is made here upon the fact that there was no fence, extending from the cattle guard to the line

fence, upon the east side; but we think it is without force. The fence upon the west side was there, and material was in the yard to rebuild that upon the east side. But we think it is not incumbent to build fences to advise employés of the existence of cattle guards. They have another purpose. The cattle guard was plainly visible, and at a place where the proof, as well as common experience, shows it was to have been expected.

The judgment is affirmed.

The other Justices concurred.