LA FLAMME *v.* DETROIT & MACKINAW RAILWAY CO.

1. RAILROAD COMPANIES — CATTLE GUARDS — SUFFICIENCY — APPROVAL BY RAILROAD COMMISSIONER.

Under 3 How. Stat. § 3377, providing that any cattle guard which shall have the written approval of the railroad commissioner shall be a legal cattle guard, a railroad company is protected in the use of a guard which has been approved by the commissioner either by name or by definite description.

2. SAME—LIABILITY FOR KILLING STOCK—CONTRIBUTORY NEGLIGENCE.

The statutory liability of a railroad company for stock killed upon its track by reason of its failure to maintain a sufficient cattle guard is not affected by the contributory negligence of the owner of the stock.

Error to Alcona; Simpson, J.    Submitted April 29, 1896.    Decided May 26, 1896.

Case by Joseph La Flamme and another against the Detroit & Mackinaw Railway Company to recover the value of a horse killed on defendant's right of way. From a judgment for plaintiffs, defendant brings error. Reversed.

*Albert E. Sharpe,* for appellant.

*Henry & Pugh,* for appellees.

HOOKER, J.    Plaintiffs' horse walked over a cattle guard upon the defendant's railroad track, and was killed. The defendant appeals from a verdict for its value. The cattle guard was a patent one, known as the "National Surface Cattle Guard," and it appeared that cattle were in the habit of walking over it, and that the plaintiffs' tenant turned their horse into the road with the knowledge that he had crossed said cattle guard.

Counsel for the defendant contends that the cattle guard was sufficient, and that, therefore, there could be no recovery. The claim was based upon a printed paper over the name of a former railroad commissioner of this State, approving that kind of cattle guard (which was a patented article, having a definite name), and authorizing its use upon another railroad. This certificate of approval rests upon section 3377, 3 How. Stat., which, after requiring the construction of cattle guards, contains the following, viz.:

"*Provided*, that any fence or cattle guard which shall have the written approval and indorsement of the commissioner of railroads of this State, and which fence is not less than four and one-half feet in height, and is otherwise equal in durability, strength, and sufficiency to turn animals and stock to the fences herein described, shall be a legal railroad fence or cattle guard."

The court instructed the jury that—

"The defendant has put in evidence here a certain paper from the commissioner of railroads showing that the cattle guard, the kind of cattle guard, that they did put in there, was one approved by the commissioner. Now, gentlemen of the jury, that is evidence to show what kind of cattle guard it was. We have a statute that says that a cattle guard approved by the commissioner of railroads shall be deemed sufficient; but I am inclined to construe that law to mean that it shall only make it positively such a one as shall stand, and be a defense only where the commissioner has approved it after it is established. I think that the statute referring to fences and cattle guards that the commissioner shall approve of must be cattle guards that are already established and fences that are already made, and that he sees and approves of; but yet, gentlemen of the jury, the fact that the commissioner approved of this kind of cattle guard as being in compliance with the law would be proof that the cattle guard in and of itself was a proper one. The commissioner has stated in his certificate that this kind of cattle guards are such as the law requires; but, of course, as to whether it was put in, in shape and condition, as it should be, and whether or not it was out

of repair or anything of that kind, that is a question for you to settle."

In this, we think, the court was in error. It would be next to a physical impossibility for the railroad commissioner to inspect and in writing approve every cattle guard and every foot of fence upon the various railroads; and we think the plain intent of the statute is complied with when he describes the fence or cattle guard which he approves, or where he mentions it by name, where such name applies to a cattle guard of definite and fixed description. The defendant was therefore entitled to the instruction that this was a legal cattle guard, if properly erected and in repair.

Counsel for the defendant requested the court to instruct the jury that—

"If St. Peter, the tenant of plaintiffs' farm, knew that this horse was in the habit of going upon the defendant's right of way by passing over this cattle guard, and had himself driven him out of this fenced right of way, and then voluntarily turned the horse out to run on the street near this crossing, the plaintiffs cannot recover."

The request should have been given, unless the statute forbids. *Robinson* v. *Railroad Co.*, 79 Mich. 323. But it is urged that the statute imposes a liability upon the railroad where animals get upon the track from the highway, and are killed, where a lawful cattle guard has not been provided. We think the case falls within the rule stated in *Flint & P. M. R. Co.* v. *Lull*, 28 Mich. 515.

The judgment is reversed, and a new trial ordered.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. LONG, C. J., did not sit.