HATHAWAY *v.* DETROIT, TOLEDO & MILWAUKEE
RAILWAY CO.

1. RAILROADS — KILLING CATTLE — DEFECTIVE CATTLE-GUARD—
   DECLARATION—AMENDMENT.

   Where, in an action against a railroad company for the kill-
   ing of cattle alleged to have strayed upon the track owing to
   defendant's failure to maintain a proper cattle-guard, the
   declaration alleged that the ballast had not been excavated
   from between the ties, and that sand and gravel completely
   filled the spaces between the joists, so that the guard offered
   no resistance to cattle going over it, and on the trial the tes-
   timony tended to show that the spaces between the joists had
   become filled with cinders, it was proper to allow an amend-
   ment of the declaration to conform to the evidence.

2. SAME—LIABILITY—INSTRUCTIONS.

   The court charged that if the jury should find that the guards
   were such as were approved by the railroad commissioner,
   but that the company failed to keep the same in repair, and
   that the cattle went upon the track over the guards so
   out of repair, and that the injury was occasioned by such
   want of repair, the defendant would be liable, but that if
   they should find that the guards were in repair, or that
   the injury was not occasioned because of want of repair, the
   company would not be liable. *Held,* that the instruction was
   sufficiently favorable to defendant.

3. SAME—CONTRIBUTORY NEGLIGENCE.

   The statutory liability of a railroad company for stock killed
   upon its track by reason of its failure to maintain a sufficient
   cattle-guard is not affected by the contributory negligence of
   the owner of the stock.

4. SAME—YARD LIMITS—DEFENSES.

   A railroad company which fences its right of way, and puts
   in a cattle-guard, at a point 30 to 80 rods from a country pas-
   senger station, cannot be exempted from liability for stock
   killed on its tracks by reason of the defective condition of the
   guard, on the ground that it was not required to fence or
   guard the place because within the yard limits.

5. TRIAL—ARGUMENT—CONDUCT OF COUNSEL.
It was not error for the court to prohibit an attorney sitting
10 feet from his associate from making suggestions to him
while the latter was addressing the jury.

Error to Lenawee; Chester, J. Submitted June 12, 1900. Decided September 13, 1900.

Case by William P. Hathaway against the Detroit, Toledo & Milwaukee Railway Company for the killing of cattle. From a judgment for plaintiff, defendant brings error. Affirmed.

*Walter B. Richie* and *Watts, Bean & Smith*, for appellant.

*John E. Bird*, for appellee.

MOORE, J. The plaintiff recovered a judgment against defendant, from which judgment the case is brought here by writ of error. There are a good many assignments of error, but few of which we deem of sufficient importance to merit discussion.

The defendant's railroad runs east and west, crossing the Cincinnati Northern road at Addison Junction. There is a small passenger station west of the Cincinnati Northern road, and north of the defendant's road. There is a small freight station immediately east of the Cincinnati Northern road, and south of the defendant's road, and not far from its track. Nearly all the freight handled at this freight house is transferred from one road to the other. At a point east of the intersection of these two roads, at a distance not very accurately disclosed by the record, but variously stated by the witnesses to be from 30 to 80 rods, a highway crosses the defendant's road at right angles. West of this highway, at a distance variously stated at 10 or 20 rods, there is a Y extending from the defendant's road in a northwesterly direction to the Cincinnati Northern road. At the highway crossing, cattle-guards have been put in, and the right of way has

been fenced east of said highway. Two freight trains and two passenger trains are run over the defendant's road each way daily. It is the claim of the plaintiff that the east cattle-guard was not kept in repair, but cinders and other things were allowed to accumulate between the slats or joists, until cattle could readily pass from the highway, over the cattle-guard, upon the defendant's right of way. His cattle escaped from his field into the highway, and, passing over the cattle-guard, were killed.

The first point calling for discussion relates to the sufficiency of the declaration. It contained an allegation reading as follows:

"And that said guard was out of repair, in this, to wit: That there was no appearance of a pit beneath the joists constituting the said cattle-guard; that the ballast had not been excavated from between the ties upon which said guard rested; that the ballast had not been excavated from between the joists of said cattle-guard; that sand and gravel completely filled the spaces between the said joists, so that the said guard offered no resistance to cattle going over it; and that the said joists constituting said cattle-guard were too far apart; and that said joists were too small to make the same a legal cattle-guard."

The testimony of the plaintiff tended to show that the spaces between the joists had become filled by allowing cinders to accumulate therein. It is said that cinders are not ballast, and are not sand and gravel, and that the declaration was not specific enough; citing *McDonald* v. *Railway Co.*, 51 Mich. 638 (17 N. W. 210), and *Smead* v. *Railway Co.*, 58 Mich. 202 (24 N. W. 761). These cases do not sustain the contention of counsel; but, to avoid any question about the declaration, the plaintiff obtained leave to amend it by inserting the word "cinders" therein. Under our statute of amendments, it was entirely competent for the court to allow this amendment.

It was claimed on the part of the defendant that it put in a cattle-guard approved by the railroad commissioner, and kept it in good repair, and therefore it was not liable. Whether the cattle-guard was in repair or not was a dis-

puted question, in relation to which much evidence was given upon both sides. The court charged the jury as follows:

" You are further instructed, gentlemen, that if you find from the evidence in this case that the guards in question were not such guards as were approved by the railroad commissioner, or that they were not placed down as required by the railroad commissioner, under his plans and specifications submitted here, then you would find the defendant liable, under further instructions that I will give you. Or if you find that they were such guards, and were so placed, as required by the plans and specifications approved by the commissioner of railroads, but that the company had negligently failed to keep such guards in repair, then you will find them liable. When I say 'keep them in repair,' I mean in good and sufficient repair, so they would serve the purpose for which they were placed there. I do not mean that, if you find they were in that condition, they would be liable, but you must further find that this injury was occasioned because of such defect, if you find it. In other words, gentlemen, if you find that the guards in question are such as are approved, and further find that the company negligently failed to keep the same in repair (that is, negligently permitted them to fill up between the slats with cinders, ballast, or dirt), and that these cattle went upon the railroad track, over these guards so out of repair, and that the injury was occasioned by such want of repair, then the defendant would be liable. If, on the other hand, you do not find these things to be true, then they would not be liable; that is, if you find that the guards were in repair, the company would not be liable, or, if you find that the injury was not occasioned because of the want of repair, then the company would not be liable."

We think this was a sufficiently favorable instruction. 2 Comp. Laws 1897, § 6294, and cases cited in note thereto.

The judge was asked to charge the jury as follows:

"Under the pleadings and proofs in this case, before the plaintiff can recover you must be satisfied that these cattle of plaintiff got upon the railroad of defendant, and across the guard in question, without any negligence on the part of plaintiff contributory to said animals getting upon said railroad and over said guards."

Because he declined to do so, it is said to be error. The court did not err in his refusal to give this request *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510; *La Flamme* v. *Railway Co.*, 109 Mich. 509 (67 N. W. 556).

It is said that this highway was within the yard limits, and the company was not bound to maintain a culvert at all at this point; citing *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510; *Chicago, etc., R. Co.* v. *Campbell*, 47 Mich. 265 (11 N. W. 152); *McGrath* v. *Railroad Co.*, 57 Mich. 555 (24 N. W. 854); *Rinear* v. *Railroad Co.*, 70 Mich. 620 (38 N. W. 599); *Grondin* v. *Railway Co.*, 100 Mich. 598 (59 N. W. 229); *McDonald* v. *Railway Co.*, 113 Mich. 484 (71 N. W. 859); *Schneekloth* v. *Railway Co.*, 108 Mich. 1 (65 N. W. 663); *Fuller* v. *Railway Co.*, 108 Mich. 690 (66 N. W. 593). It is no longer an open question in this State that railroad companies are not bound to fence their station grounds. So far as these cases are applicable at all to the facts disclosed in this record, they are against the contention of the defendant. They hold that the statute requires a railroad company to fence its track and to put in cattle-guards at road crossings, but this requirement has no reference to station grounds; the exemption from this requirement applying to cases where the common convenience of the public and the railway company require that the place should be open for the transaction of their mutual business. At the place in controversy the public was not admitted at all. The right of way was fenced. The company put in a cattle-guard, and claimed that it maintained it in good order. Prior to this accident the company did not proceed upon the theory that it was not required to fence its right of way and maintain a cattle-guard at this place, but, on the contrary, did both, and upon the trial claimed by way of defense that it did both so well as to meet the requirements of the statute. The station was from 30 to 80 rods from this crossing. The public had no access to the right of way or to the station grounds or to the freight depot at this place, and the exception to the requirements of the statute does not apply here.

During the progress of the trial the following occurred:

" During the course of Mr. Smith's argument to the jury, Mr. Bean interrupted him with a suggestion, to which Mr. Bird, counsel for plaintiff, objected, and thereupon the following colloquy took place:

"*Mr. Bean:* During the time my associate is making an argument, may I not make a suggestion to him from the table?

"*The Court:* I will make a record of this question that is now raised. I do not think it is proper for counsel to sit clear back where the attorneys sit, and speak to their associates when addressing the jury,—clear across the room, a distance of 10 feet.

"*Mr. Bean:* Can I not do it while sitting at my table? That is what I want settled. I do it with all due respect to the court, but I contend that, when my associate is making an argument, I may make a suggestion to him,—just one word, to give him the idea.

"*Mr. Smith:* And, as a part of it, I want to say that it interrupts me less to have Mr. Bean speak to me out loud than it does to whisper to me. I am sometimes unable to catch it when he whispers to me.

"*The Court:* I repeat it, because it results in two counsel talking at the same time, and it is very confusing in the court-room. You may assist counsel all that you desire, but in the way I suggest."

It is said that this is error, and counsel argue seriously that they should be permitted to use their own judgment as to the manner of the argument, and that they were prevented from making their argument in accordance with their ideas of the most effective manner of doing so. They say in their brief:

" The matter may not be so important in this case, since the court substantially declined to submit the claims of defendant to the jury. At the same time, the question continually arises in our court, and we think that this court should determine what our rights are in the premises."

The action of the circuit judge in insisting upon an orderly presentation of the case, instead of being ground for a reversal of the case, has our unqualified commendation.

The other assignments of error do not call for discus-
sion.

Judgment is affirmed.

The other Justices concurred.