STEWART *v.* GRAND RAPIDS & INDIANA RAILROAD CO.

1. RAILROADS—FENCING TRACK—YARDS—CATTLE GUARDS — DUTY
    TO MAINTAIN.
       By fencing each side of its main track to a point near a station
       a railroad company exercises its discretion to determine the
       limits of its station grounds and fixes that point as such limits.

2. APPEAL AND ERROR—RIGHT OF REVIEW—WAIVER.
       To justify this court in declaring that an appellant has waived
       the right to have reviewed a question obviously and neces-
       sarily determined by an adverse judgment of the lower court,
       this court should be able to refer to the record for some con-
       duct from which waiver can fairly be inferred.

3. RAILROADS—CATTLE GUARDS—DUTY TO MAINTAIN—YARD LIMITS.
       A railroad company is under a statutory (section 6294, 2 Comp.
       Laws) obligation to provide and maintain cattle guards and
       connecting fences at the point where its fenced track leaves
       its unfenced yard.

Error to Missaukee; Chittenden, J.  Submitted October 18, 1906.  (Docket No. 99.)  Decided January 4, 1907.

Case by Joseph Stewart against the Grand Rapids & Indiana Railroad Company for the killing of certain cattle.  There was judgment for defendant on a verdict directed by the court, and plaintiff brings error.  Reversed.

*E. F. Sawyer*, for appellant.

*James H. Campbell*, for appellee.

CARPENTER, J.  Plaintiff brings this suit to recover compensation for the loss of five head of cattle killed through the alleged negligence of defendant.  These cattle were struck by defendant's train and killed while they were on defendant's main track, about one-half mile south of Osceola Junction, Osceola county.  They had entered on

said railway from the station grounds at said junction at a point where there were no cattle guards or connecting fences, and the liability of defendant in this case depends upon whether it was under any obligation to provide and maintain such cattle guards and connecting fences. The trial court decided that there was no such obligation, and directed a verdict in defendant's favor.

To correctly determine this question, a statement of the situation and surroundings at Osceola Junction is necessary. At Osceola Junction a spur track extends west from defendant's main track. The main track runs north and south, and the spur track nearly east and west. The spur track is connected with the main track by a Y. The distance between the points where the two arms of the Y intersect the main track was about 15 rods. Defendant's station (and this is a regular station where both passengers and freight are received and discharged) is situated at the point where the south arm of the Y intersects the main track. The public obtains access to this station by a highway running east and west. This highway, except as hereafter stated, is located on a quarter section line, 10 or 15 rods north of defendant's station. At a point 15 rods west of defendant's main track the highway leaves the quarter line and angles directly to defendant's station. From that point it continues east, crossing the main track upon planks laid for that purpose by defendant. It then passes through a fence on the east side of defendant's right of way—a gate being provided for that purpose— thence proceeds north, parallel to said track, until it strikes the quarter section line, and then proceeds east on said line. This highway has been in existence and used by the public in the manner above indicated for 17 years, and the public authorities have expended money upon it for highway purposes. There is no fence on the west side of defendant's main track between the points where it is intersected by the two arms of the Y, but that track is fenced on each side beyond these two arms, and on the

east side opposite the space between said arms. In other words, all of defendant's track is fenced, save the space on the west side between the two arms of the Y. Plaintiff's cattle entered upon defendant's railway at the point where the highway above described crosses defendant's main track. From this point south there were, as above stated, fences on each side of said railway; but neither at this point nor at any other point for a distance of 2½ miles did defendant maintain cattle guards, connecting fences, or anything else to prevent cattle entering its railway. And, as heretofore indicated, defendant's liability in this case depends upon its obligation to maintain such cattle guards and connecting fences at this point.

In support of its claim that it was under no such obligation, defendant contends that this point was within the limits of the station grounds, because it should, it insists, be presumed that a siding described as a "long siding" continues south of this point. This contention, even from the point of view most favorable to defendant, is merely technical; for, if the place in question was within the limits of the station grounds, there was a place further south—over which it must be assumed plaintiff's cattle crossed before they were killed—which marked its southern boundary, and at this latter place defendant should (as we shall hereafter show) and did not maintain cattle guards and connecting fences, and this failure made it responsible in this case. But the contention is not, in my judgment, even technically sound. We have held that railroad companies have a discretion within reasonable limits to determine the boundaries of their station grounds. *McGrath* v. *Railroad Co.*, 57 Mich. 555; *Rabidon* v. *Railway Co.*, 115 Mich. 390 (39 L. R. A. 405). I think we are bound to hold that defendant by fencing each side of its main track from the point in question exercised that discretion and fixed that point as the southern boundary of its station grounds. See, also, *Hathaway* v. *Railway Co.*, 124 Mich. 610. Otherwise, defendant, by maintaining, as it should, the cattle guards and connecting fences

south of this place, on what it now claims was the true boundary of its yards, would have constructed a trap for cattle and other stock, endangering their safety and imperiling the lives of passengers carried on its trains.

The record, then, presents this question: Is a railroad company under a statutory obligation to provide and maintain cattle guards and connecting fences at the point where its fenced track leaves its unfenced station grounds? Defendant contends that this question cannot be considered because it was not raised in the circuit court. We cannot assent to this contention. That question was obviously involved in the contention of plaintiff, denied by the trial judge, that the statute imposed upon defendant an obligation to maintain cattle guards and connecting fences at the point where his cattle entered on defendant's railway. It is true there was also involved in this contention the question of whether the road at that point was a public highway. If it was, defendant's obligation to maintain cattle guards, etc., was fixed by section 6294, 2 Comp. Laws. The record does not contain the argument of plaintiff's counsel in support of this contention. We cannot, therefore, say that he did not in that argument present the question under consideration. It is possible that the trial judge did not apprehend it, but even this we cannot say with certainty. To justify our declaring that an appellant has waived the right to have reviewed in this court a question obviously and necessarily determined by an adverse judgment of the lower court, we should be able to refer to some conduct from which that waiver can fairly be inferred. The claim of waiver in all such cases must be supported by the record. It cannot rest on mere presumption. We cannot, therefore, decline to consider the question upon the ground that plaintiff has waived his right to have it considered in this court. We think it, therefore, our duty to determine the question. In the interest of clearness we restate it: Is a railroad company under an obligation to provide and main-

tain cattle guards and connecting fences at the point where its fenced track leaves its unfenced yard ?

The statute ( section 6294, 2 Comp. Laws) obligates all railroad companies in this State to fence their tracks. The station grounds of railroad companies are not in express terms excepted from this statute. This court has held that they are excepted by implication (see *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510) because "the convenience of the company, as well as of the public in transacting business with it, would be very seriously incommoded by such fencing." See, also, *Hathaway* v. *Railway Co.*, supra. It is obvious that the exemption of railroad companies from the obligation to fence their station grounds in no way lessens their obligation to fence other portions of their railroad. Those portions must none the less be effectually fenced. Clearly they are not so fenced if cattle guards and connecting fences ( or some substitute therefor) are not maintained at the point where they leave the unfenced station grounds. Without such cattle guards and connecting fences, the fence on either side of the railroad fails to perform its purpose. For in such a case cattle may, as they did here, enter upon the railroad from a public highway by walking a short distance across an unfenced yard. We have no hesitation, therefore, in saying that the statute, properly construed, requires the maintenance of such cattle guards and wing fences. Any other construction would defeat the obvious purpose for which the statute was enacted. This conclusion harmonizes with the reasoning of this court in *Fuller* v. *Railway Co.*, 108 Mich. 690. The court erred in directing a verdict for defendant.

Judgment reversed, and a new trial ordered.

McALVAY, C. J., and GRANT, BLAIR, and MOORE, JJ., concurred.