RICHARDS *v.* WALTZ.

1. ANIMALS — KILLING ANIMALS — CUTTING ICE — BARRICADING
   OPENINGS—STATUTORY DUTY—EFFECT OF NEGLECT.
   Act No. 221, Pub. Acts 1899, making it the duty of ice cutters
   to barricade openings in the ice, was not intended to protect
   or prevent injury to unattended animals, and does not create
   a liability in favor of the owner of a cow allowed to go un-
   attended to a lake to drink and drowned in an unprotected
   hole in the ice made by defendant. CARPENTER, MONTGOM-
   ERY, and MCALVAY, JJ., dissenting.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   Where plaintiff knew that ice was being cut in a lake near
   his home, and presumably knew the character of the barri-
   cade required by the statute to be erected about the cutting, he
   was not free from negligence in allowing his cattle to go to
   the lake unattended to drink. CARPENTER, MONTGOMERY,
   and MCALVAY, JJ., dissenting.

Error to Muskegon; Sessions, J. Submitted January
21, 1908. (Docket No. 103.) Decided July 1, 1908.

Case by Louis Richards against Fred Waltz and others
for the negligent killing of plaintiff's cow. There was
judgment for defendants on a verdict directed by the
court, and plaintiff brings error. Affirmed.

*Cross, Lovelace & Ross*, for appellant.

*Turner & Turner*, for appellees.

HOOKER, J. The plaintiff is a resident of the unincor-
porated village of Twin Lake, which is upon the east
shore of a body of water called Twin Lake, and some of
the streets of which are said to run to the shore of the lake.
He was the owner of some cows. In conformity to his
daily practice, he turned these cows and a horse into the
highway, about ten o'clock in the forenoon, and paid no

further attention to them until about half past twelve, when he heard that one was drowned in the lake at a place where the defendants had made a hole by cutting and removing ice.

The plaintiff testified that he and others had been in the daily habit of opening drinking holes through the ice at the edge of the lake in the village, and he testified that he turned his animals out to water them at the lake about 40 rods from his house. He stated that he knew it to be the habit of people generally to gather ice from this lake every winter, and that parties cut ice every winter at the place where the cow was drowned, and he knew that they were cutting there that winter, though he had not been down there, and he knew it when he let the cow out. The cow was drowned at a point some 80 rods from the premises of the plaintiff. The cow did not go upon the lake at the drinking place, but, as plaintiff stated, left the highway and crossing private property owned by one Duff, about five rods, went upon the lake, and thence four rods further to the place of drowning, which was at least 40 rods distant from the drinking place. He said that at the time he let the cows out he "did not go down to inspect the hole where they were cutting ice, he paid no attention to it." He did not testify that he supposed barricades were up, or even that he did not understand that they were not up, so far as we can discover from the record.

There are two counts in this declaration, one an ordinary common-law count for negligence, and the other pleading the statutory duty of erecting barricades, etc., i. e., Act No. 221, Pub. Acts 1899. So far as the first count is concerned, if it can be said that the acts of defendants would be negligence in the absence of the statute, which we doubt, the conduct of the plaintiff in turning out his cows, and leaving them to stray where they pleased, amounted to contributory negligence under the rule of the following cases. *Robinson* v. *Railroad Co.*,

79 Mich. 323; *Niemann* v. *Railroad Co.*, 80 Mich. 199; *Wright* v. *Railway Co.*, 12 N. Dak. 159.

It is clear, however, that the defendants failed to perform the statutory duty of erecting barricades, and it is urged that an action for negligence may rest upon that in a proper case, although the act does not expressly provide for it, as some statutes do.

It was entitled:

"An act to compel parties engaged in securing ice to erect suitable danger signals and barricades, designating what officials it shall be the duty of to see that the provisions of this act are complied with," etc.

"SECTION 1. That it shall be the duty of any person or persons who are, or who hereafter may be, engaged in the procuring of ice from any of the streams, ponds or lakes of this State to erect, or cause to be erected, place, or caused to be placed, at or near all places where they shall be cutting ice, suitable danger signals and barricades. Such barricades shall consist of cross bars upon which a pole, rope, chain or rail shall be laid at a height not less than three feet above the ice and shall be placed not less than ten feet from the edge of the opening.

"SEC. 2. It shall be the duty of the harbor-master at all places where there is such an official having control of a stream or lake within this State, and where there is no such an official having control as aforesaid, it shall be the duty of the supervisor or other assessing officer in whose assessment district such stream or lake is situated, to see that the provisions of section one of this act are complied with.

"SEC. 3. Any person or persons who shall neglect or refuse to comply with the provisions of this act shall be deemed guilty of a misdemeanor, and shall, on conviction thereof, be punished by imprisonment in the county jail not more than three months, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment, in the discretion of the court."

It is apparent from the title and provisions of this act that it did not contemplate an effective barricade against animals, for small animals could easily go under it, and a slight effort would throw it down, and we feel justified in saying that the act was not designed to so change the

law of negligence as to impose a liability for animals which should wander upon streams and lakes and be drowned. We are also of the opinion that plaintiff's contributory negligence is a complete defense. We do not overlook the cases of *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510; *Parker* v. *Railway Co.*, 93 Mich. 607; and *La-Flamme* v. *Railway Co.*, 109 Mich. 511, all of which were based upon statutes giving a right of action and which rest upon a reason given by Mr. Justice COOLEY in the case of *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 514. He also states that if the case had been a common-law action, contributory negligence would be a defense. This distinction is consistent with the authorities cited in the *Lull Case.*

We do not discuss some other questions raised, as they are not necessary to a decision of the case.

The judgment should be affirmed.

OSTRANDER, J. I think the judgment should be affirmed upon the ground that the statute was not designed to protect, or to prevent injury to, unattended animals.

"It may be stated as a general proposition—though there may be difficulty in some cases in applying it—that the violation of a statute or municipal ordinance is not of itself a cause of action grounded upon negligence in favor of an individual, unless the statute or ordinance was designed to prevent such injuries as were suffered by the individual claiming the damages, and often not then, the question depending upon judicial theories and surmises." 1 Thompson on Negligence, § 12.

The duty imposed, under penalty, by the statute, Act No. 221, Pub. Acts 1899, upon persons engaged in procuring ice from any of the streams, ponds, or lakes of this State is to erect, or cause to be erected, place or cause to be placed, at or near all places where they shall be cutting ice,

"Suitable danger signals and barricades. Such barricades shall consist of cross bars upon which a pole, rope,

chain or rail shall be laid at a height not less than three feet above the ice and shall be placed not less than ten feet from the edge of the opening."

The legislature has not indicated the danger signal which will be "suitable." It is not easy to describe or even to imagine one which would deter cattle, turned out in the winter to find water for themselves, from going upon the ice of convenient ponds or streams in search of it. It is reasonably certain that the statute barricade would not prevent the passage of a thirsty animal to water.

Plaintiff turned out his cattle, unattended, to go to the lake for water as they had been accustomed to do. How his cow got into the hole from which ice had been cut does not appear. The testimony warrants the inference that it was in an attempt to drink quite as well as it warrants any other inference of the cause of her drowning. While it was customary for some one to cut holes in the ice each morning, at which cattle might drink, it does not appear that these holes were open on the morning in question. If the purpose of the statute was doubtful, plaintiff, who knew that ice was being harvested at the lake and who may be supposed to have known the character of the statute barricade, has not shown that his conduct was free from negligence.

GRANT, C. J., and BLAIR and MOORE, JJ., concurred with OSTRANDER, J.

CARPENTER, J. (*dissenting*). Plaintiff resides about 80 rods from Twin Lake in the county of Muskegon. March 1, 1905, he turned his cows, three in number, in the public highway in order that they might go and drink at said lake. The highway ran along the edge of the lake. At this point—which was 40 rods from plaintiff's house—it was expected that the cows would drink at holes cut through the ice for that purpose. About 40 rods farther away defendants had been cutting ice. The opening from which they had cut the ice was not

barricaded by them as required by Act No. 221 of the Public Acts of 1899. One of plaintiff's cows wandered to this opening and in some way fell in and was drowned. She did not reach this opening, as she might have done, by going upon the lake at the drinking place, but by leaving the highway, crossing the land of one Duff for five rods and thence walking on the lake about four rods to said opening. It should also be stated that the lake was meandered; that defendants owned no property adjacent thereto, and that a resolution of the board of supervisors of Muskegon county, passed pursuant to section 5607, 2 Comp. Laws, authorized cattle to run at large in the public highway.

Plaintiff brought this suit in justice's court to recover compensation for the loss of his cow. It was tried by a jury and a verdict of six cents rendered in plaintiff's favor. Plaintiff appealed to the circuit court. It was there tried before a jury and a verdict rendered in defendant's favor by direction of the court. Plaintiff asks us to reverse the judgment entered on said verdict. Three questions are raised:

*First.* Did the failure of defendants to erect barricades violate any duty they owed to plaintiff?
*Second.* If so, was the neglect to comply with that duty the proximate cause of plaintiff's damages?
*Third.* Was plaintiff guilty of contributory negligence?

We proceed to consider these questions separately.

*First.* Did the failure of defendants to erect barricades violate any duty they owed to plaintiff? This depends upon the proper construction of the statute, Act No. 221 of the Public Acts of 1899. That statute makes it the duty—

"Of any person or persons who are, or who hereafter may be, engaged in the procuring of ice from any of the streams, ponds or lakes of this State to erect * * * danger signals and barricades. Such barricades shall consist of cross bars upon which a pole, rope, chain or rail shall be laid at a height not less than three feet above the

ice, and shall be placed not less than ten feet from the edge of the opening."

Neglect or refusal to comply with the provisions of this act is made a misdemeanor punishable by fine and imprisonment. The learned trial judge held that the statute "is designed for the protection of the entire public and not for the protection of individuals." We cannot agree with him. As a general proposition it may be said that a statutory duty is a duty toward every individual likely to be injured by its nonobservance, and one so injured has a right of action. We think it may be said in this case, as was said by the Supreme Court of the United States in a somewhat similar case (*Hayes* v. *Railroad Co.*, 111 U. S. 228):

"The duty is due   *   *   *   to the public considered as composed of individual persons; and each person specially injured by the breach of the obligation is entitled to his individual compensation, and to an action for its recovery."

See, also, *Deneen* v. *Railway Co.*, 150 Mich. 235; *Jetter* v. *Railroad Co.*, 2 Keyes (N. Y.), 162; *Akers* v. *Railway Co.*, 58 Minn. 540; *McRickard* v. *Flint*, 114 N. Y. 222. This case is within the principle of *Stowell* v. *Standard Oil Co.*, 139 Mich. 18. Indeed that case goes further than this, for there we held that the statute making it unlawful to sell rejected or condemned oil, or oil that had not been legally inspected, created a duty not only toward the direct purchaser, but also toward a consumer who bought from said purchaser, and a judgment in favor of such a consumer was there affirmed upon the ground (see Pollock on Torts [Webb's Am. Ed. p. 24]):

"The commission of an act specifically forbidden by law, or the omission or failure to perform any duty specifically imposed by law, is generally equivalent to an act done with intent to cause wrongful injury."

The case of *Taylor* v. *Railroad Co.*, 45 Mich. 74, is exceptional and is not opposed to the principles of this opin-

ion.  There it was held that an ordinance imposing upon property owners an obligation to repair the sidewalk adjacent to their premises and "to remove snow and ice therefrom" and "to keep the same free from obstruction and incumbrances" did not create a duty toward individuals, and therefore that plaintiff, who was injured in consequence of a failure to remove such snow and ice, had no cause of action.  The reasoning of the court, briefly stated, was as follows.  The purpose of the ordinance was to promote the convenience as well as the safety of individual travelers; if such travelers could recover damages for injury arising from an unsafe walk, they could also recover damages if a total obstruction of the walk diminished their comfort, and as these latter damages could not be recovered, neither could the former.  It is clear that this reasoning has no application to the case at bar.

Since preparing this opinion, I have been served with an opposing opinion written by Justice OSTRANDER, in which he denies that the statute gave plaintiff a cause of action. His reasoning rests upon two grounds:

1st.  The assumption that the cow fell in the opening in attempting to drink.  This, it seems to me, can be most appropriately discussed under the second heading in this opinion, and it will there be discussed.

2d.  "That the statute was not designed to protect or to prevent injury to unattended animals."

The design or purpose of the statute is to be inferred from its language.  What mischief was its observance calculated to prevent?  Would the observance of the statutory requirement "to place a barricade consisting of cross bars upon which a pole, rope, chain or rail shall be laid at a height of not less than three feet above the ice and at a distance not less than ten feet from the edge of the opening" tend to keep domestic animals from being drowned in the opening?  If it would, then we may attribute to the legislature by the enactment of this law the purpose of protecting such cattle.  Undoubtedly such a barricade would afford insufficient protection to unruly

cattle. But, on the other hand, it seems to me equally clear that it would afford protection to ruly and docile cattle. We may take judicial notice that barricades no stronger than this often serve that purpose. It is suggested by Justice HOOKER that the barricade would be ineffectual to stop the passage of small animals. This is true, for sheep and swine will easily pass under a barricade three feet above the ice. This suggestion is important if it may be said that because the barricade would be altogether ineffectual to stop the passage of sheep and swine, it should be inferred that it was not intended to stop the passage of cattle. If this inference cannot be drawn, the suggestion is unimportant. I do not think this inference can be drawn. We may take judicial notice that there is much less likelihood of sheep or swine going unattended in winter than there is of cattle or horses. And therefore it is not to be inferred that the legislature did not intend to protect cattle because they failed to provide for the protection of sheep and swine. I therefore think that we should say that one of the purposes of the statute was to prevent injury to unattended cattle. I regard as unimportant the circumstance that, before reaching the opening in the ice, plaintiff's cow had trespassed on the land of one Duff. It is sufficient to say that when she reached the opening she was not trespassing on any rights of defendants, and the statute imposed upon them the obligation to have barricades for the purpose of preventing her being drowned.

*Second.* Was the failure of defendants to barricade the opening the proximate cause of plaintiff's loss? Though it is true, as the trial judge said, "there is no proof showing that if there had been such a barrier as the statute requires that that would have prevented this cow from getting into the holes in the ice," an inference that it would could have been legitimately drawn, and the question should therefore have been submitted to the jury. *Hayes* v. *Railroad Co.*, supra, is a case in point. There the defendant railroad company had neglected to fence its

track as required by an ordinance of the city of Chicago. Plaintiff, a child of tender years, went on this unfenced track and was injured. It was argued that the "want of a fence could not reasonably be alleged as the cause of the injury." In answer to this the court said:

"In the sense of an efficient cause, this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, Was it causa sine qua non, a cause which if it had not existed, the injury would not have taken place ?  *  *  *  The rule laid down by Willes, J., in *Daniel* v. *Railway Co.*, L. R. 3 C. P. 216, 222, and approved by the exchequer chamber, L. R. 3 C. P. 591, and by the house of lords, L. R. 5 H. L. 45, was this: 'It is necessary for the plaintiff to establish by evidence circumstances from which it may fairly be inferred that there is reasonable probability that the accident resulted from the want of some precaution which the defendant might and ought to have resorted to;' and in the case of *Williams* v. *Railway Co.*, L. R. 9 Exch. 157, where that rule was applied to a case similar to the present, it was said:

"'There are many supposable circumstances under which the accident may have happened, and which would connect the accident with the neglect. If the child was merely wandering about and he had met with a stile, he would probably have been turned back; and one at least of the objects for which a gate or stile is required is to warn people of what is before them and to make them pause before reaching a dangerous place like a railroad.'"

I now consider the contention of my Brother OSTRANDER, heretofore referred to, that the cow was drowned because she was attempting to drink from the opening in the ice left unprotected by defendants. This contention rests in part upon the assumption that this was the only place for her to drink. I regard this assumption as unfounded, for the plaintiff testified "somebody went down to see that the holes was open for the water, but I didn't." It thus appears that it was customary for someone to open these holes every morning, and there is no evidence that this custom was not observed on the morning in question. Moreover, another and sufficient explanation of the cow's

drowning is furnished by the following testimony quoted from the record: A witness who visited the place with the plaintiff shortly after the cow was drowned, testified:

"The place where they had been cutting ice before, there had been some slush and snow and stuff thrown in the water and a scum of snow was formed."

Another witness testified:

"It was not all open water because we came pretty near walking into the hole ourselves. I didn't notice no cakes of ice; I didn't see anything to prevent a person or animal from walking into the ice; not a thing; would have done it if Mr. Richards hadn't hollered at us. * * * There was wet snow and ice around the edge of the hole; it was just like it was all over the lake."

From this testimony the inference may be drawn that the cow walked into the opening not because she was searching for a drink, but because there was nothing to distinguish it from the solid ice surrounding it. Neither can it be said as a matter of law that the statutory barricade placed ten feet away from the opening would not prevent a docile cow from attempting to get a drink from the open water beyond.

3. Contributory negligence. One of the grounds upon which it is contended that plaintiff's contributory negligence precludes recovery is that he committed an unlawful act in letting his cows go unattended in the public highway. The public cannot complain that this act was unlawful, for the board of supervisors, acting pursuant to legislative authority, had given plaintiff permission to do it. It is true it is held by a well-considered case (*Tonawanda R. Co.* v. *Munger*, 5 Denio [N. Y.], 255) that the public cannot confer upon an individual the right to use the highway "as a sheep walk or a pasture ground for cattle," for this would be "taking the private property of the owner of the land used as a highway and transferring it to the owner of the cattle." But I can see no reason to doubt that the public may permit cattle to pass unattended along the public highway, and if plaintiff's cows

did nothing more than this—and it is not to be inferred that they did—they were not unlawfully in the highway, and plaintiff did no unlawful act in permitting them to be there for that purpose.

*Third.* I come now to the remaining ground, upon which it is urged that plaintiff was guilty of contributory negligence. That is this, that, knowing as he did that ice was being taken from the lake, he should have anticipated that his unattended cows would be exposed to the danger of falling through the opening from which the ice was taken. If plaintiff had known or had reason to anticipate that this opening was unguarded I should agree that he was guilty of contributory negligence. From the record we are able to say this, and only this, that he knew that ice was being cut. He himself had cut ice at this place and had, as he testifies, barricaded the opening. He had not himself visited the lake, and therefore had no personal knowledge of the method of defendants' operations. Shall we say that he was bound to know or to believe that they were leaving the opening without barricades? I am compelled to answer this question "no." He had a right to believe that defendants would observe the law. He was not bound to assume that they would violate it. His cows, in going unattended to the lake, were therefore exposed to a danger which, as a reasonably prudent person, he was not bound to anticipate. We cannot therefore say that he was guilty of negligence contributing to his loss.

Judgment should be reversed and a new trial ordered.

MONTGOMERY and MCALVAY, JJ., concurred with CARPENTER, J.