CHAPIN v. ANN ARBOR RAILROAD CO.

1. PLEADING—DEMURRER—SUFFICIENCY OF DECLARATION—TRIAL.
    A declaration not demurred to, charging defendant railroad company with not maintaining a cattle guard sufficient to prevent cattle from straying on its right of way, or such as the Michigan railroad commission had approved, warranted the admission of evidence and of proof that the guard constructed did not conform to the plan presented by defendant to and approved by the Michigan railroad commission.

2. RAILROADS—TRIAL—REBUTTAL.
    On the trial of such issue it was not error, on rebuttal, after the defense had shown that the guard used was in accordance with the plan submitted to and approved by the railroad commission, no motion to direct a verdict having been made at the close of plaintiff's evidence, which tended to establish the insufficiency of the cattle guard, to permit plaintiff to introduce testimony to meet the defense and prove that the guard did not conform to such plan.

3. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—ANIMALS.
    The mere negligence of plaintiff in permitting his cattle to run at large did not constitute a defense to an action under the statute; 2 Comp. Laws, § 6294, Act No. 308, Pub. Acts 1909.

4. SAME—INSTRUCTIONS TO JURY—VALUE.
    Upon plaintiff's uncontradicted evidence that the horse was worth $250, the court rightly directed the jury that its value was the amount claimed.

5. SAME—SUFFICIENCY OF CATTLE GUARD.
    Standing alone, instructions that the plaintiff must recover on the ground that defendant was negligent in not having a sufficient guard were questionable, but the instructions were proper when considered with the remainder of the charge which advised the jury that if defendant installed a cattle guard in accordance with a plan approved by the railroad commission it was not negligent.

6. SAME.
    Nor was it incorrect for the court to instruct the jury that if the cattle guard did not conform to the plan submitted to and approved by the commission or was different in dimen-

sions or in structure and that thereby it was insufficient to turn stock, and did not turn the horse in question, the plaintiff was entitled to recover, since plaintiff's evidence as to ownership, value, circumstances of its death, insufficiency of the guard, etc., was uncontroverted.

Error to Osceola; Withey, J. Submitted November 14, 1911. (Docket No. 106.) Decided December 8, 1911.

Case by Delanson Chapin against the Ann Arbor Railroad Company for the killing of a horse. Judgment for plaintiff. Defendant brings error. Affirmed.

*Sawyer & Penny,* for appellant.

*B. N. Savidge,* for appellee.

STEERE, J. Plaintiff's horse was killed by defendant's train near a highway crossing in Marion township, Osceola county, September 18, 1909. The highway runs east and west and the railway nearly north and south at that point. Plaintiff lived on a farm, about 60 rods east of said crossing. On the day mentioned he returned from the village of Marion at about sundown, unharnessed the horses he had driven, and turned them out near the house in a yard containing two or three acres, which was sometimes used as a pasture. While he was eating his supper, to which he went immediately after turning out his team, a passenger train went south on defendant's road and killed one of the horses which had strayed onto the right of way. He learned of this accident shortly after it happened from a neighbor, who, in passing along the track from doing his chores, discovered it. They proceeded to make an investigation, which disclosed, by tracks and other conclusive evidence, that the horse had wandered from the yard upon the highway, thence across the cattle guard onto defendant's railway track to the north of the highway, walking along it some six or eight rods, when it suddenly wheeled around and ran toward the cattle guard which it had crossed, but, before reaching it, was

struck by the train, carried across the highway over both cattle guards and 100 feet beyond, where it rolled down an embankment and lay dead. The wing fences on both sides of the highway were broken and partly torn away.

These cattle guards were put in about six months before the accident and were in good condition. On July 29, 1909, some months after the guards were put in, defendant submitted a plan of cattle guard to the State railroad commission, which was approved. A print of the approved plan of cattle guard was put in evidence by defendant. Defendant claimed, and introduced testimony tending to show, that the cattle guard where the horse was killed corresponded with the plans as approved by the railroad commission. Plaintiff disputed this, and on rebuttal introduced testimony to the effect that there was a marked difference, in the particular that in the cattle guard over which plaintiff's horse passed, shortly before it was killed, the sections outside the rails contained a less number of bars, that these bars were each wider and all closer together, and not beveled as deeply nor pointed as sharply as indicated and required by the approved plan. The undisputed testimony showed the value of the horse, when killed, was $250.

Plaintiff's declaration contained two counts; the first charging negligence in failing to maintain a proper cattle guard, and the second in failing to ring the bell and blow the whistle when approaching the crossing. The second count was not relied on. The first count, to which the proofs were directed, and under which recovery was had, alleges defendant's negligence as follows:

"Yet the defendant, regardless of the statute in such case made and provided, did not, before that time, erect and maintain cattle guards at all highway and street crossings, sufficient to prevent cattle and other animals from going on said railway there, nor did the said defendant erect and maintain such cattle guards as were approved by the railroad commission of the State of Michigan, and keep said cattle guards in proper repair and condition, sufficient to prevent cattle, horses, and other animals from

going on such railroad track there, to wit, at the crossing of said railroad and a certain highway running east and west between the townships of Marion and Middle Branch in said county of Osceola, * * * in said township of Marion, in consequence of which fault and negligence, and for want of said cattle guards, and the keeping of said cattle guards in proper repair and condition, one certain horse of plaintiff then and there strayed and went upon said railroad," etc.

To this declaration defendant pleaded the general issue and gave special notice that on the trial of the cause it would offer in evidence and insist upon as part of its defense the certificate of approval by the railroad commission of the cattle guards complained of, that they were "in every particular lawful and in good repair, * * * that the injury to the animal as alleged in plaintiff's declaration was due to the negligence of the plaintiff in habitually allowing and permitting his said animal to run at large upon the public highway," and that it was unlawfully on the public highway when injured, owing to the negligence of the plaintiff.

Objection is made to the declaration; it being said in defendant's brief that it is not sufficient to allow the introduction of testimony "as to claimed defects in the cattle guards at any stage of the case."

While the declaration is rather meager, and somewhat inartistically drawn, it does allege positively that defendant did not maintain a cattle guard sufficient to keep horses and cattle from going onto the right of way, and that by reason of such negligence the horse was killed. Defendant did not demur to the declaration, but pleaded the general issue and gave notice of the special defense that a proper guard, which had been approved by the commission, was maintained. The parties went to trial upon the pleadings, with no objections raised to them by either side. If the declaration was faulty, we think the case of *Smead* v. *Railway Co.*, 58 Mich. 200 (24 N. W. 761), sustains plaintiff's contention that the objection

comes too late. In passing on a similar declaration the court there said:

"No demurrer was interposed in this case and this subject cannot be further considered."

On the trial plaintiff introduced testimony tending to show the circumstances of the accident, the value of the horse killed, and that the guard over which it passed onto defendant's right of way was not sufficient to turn animals. He offered no proof of his negative allegation, that defendant did not maintain a guard approved by the railroad commission. After plaintiff rested, no motion was made for the court to direct a verdict, but the defense was immediately begun before the jury and testimony introduced to show that the cattle guard in question was sufficient, in good repair, and had been approved by the railroad commission; documentary evidence being introduced in that connection. After defendant rested, plaintiff introduced evidence in rebuttal, showing the character and dimension of the cattle guard in detail, for the purpose of establishing the fact that it was not of the kind which had been approved by the railroad commission, as shown by the plan introduced by the defendant. This testimony was objected to and its admission is alleged as error. It is said:

"To rule that the reception of this testimony in rebuttal is proper is to allow a plaintiff to rest his entire case and compel defendant to assume the initiative and the burden of proof."

It is generally understood that the fact of the railroad commission having approved a cattle guard is a matter of defense; but, whatever rule might generally be contended for as to the buden of proof upon that issue, defendant has disposed of the question in this case by assuming that burden and first introducing testimony upon the subject, opening the door for the plaintiff to introduce testimony in rebuttal. We do not see how the court could have ruled otherwise than he did.

It is alleged as error that the court allowed witnesses to testify to cattle passing readily back and forth over the guard in question before the accident complained of, without it being shown that the guard was in the same condition as at the time the horse was killed.   It appears from the record that plaintiff did introduce testimony of that nature under objection, stating, however, when the question was raised, that he would later make the requisite proof.   This proof was subsequently made; witnesses for both plaintiff and defendant testifying fully that the guard was in the same condition.   In fact, the testimony is undisputed that the cattle guard, constructed some six months before, had always been in a good state of repair, unchanged, and substantially in the same condition during the entire time since its construction.   The subsequent testimony entirely did away with the ground of the objection, and there was no abuse of discretion on the part of the court in receiving testimony out of order as he did, under the assurance of counsel that the proper proofs subsequently would be made, as they were.

An objection to the following question, asked by the defense, was sustained, which ruling is alleged as error:

" Do you know whether or not he (plaintiff) allowed his horses to run on the road—where those guards were, and at the place where it was killed ? "

It is undisputed that this horse was killed on defendant's right of way, to which it passed over a cattle guard, not on the public highway at a crossing.   In *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510, Lull sued to recover the value of a cow killed by a passing train of defendant.   It was claimed that she had been allowed to run at large on the highway and wandered from it across a cattle guard where she was killed.   The defense urged that she was negligently allowed to run at large.   On the trial of the case the court charged that if the cow passed upon the railroad track in consequence of the neglect of the defendant to have there a sufficient cattle guard to prevent her

passing from the highway to its right of way, and she was there killed, the verdict must be for the plaintiff without regard to any question of negligence in leaving her to run at large. This charge was sustained in the following language:

"The decisions may almost be said to be uniform that in cases like the present, arising under such statutes, the mere negligence of the plaintiff in the care of his property can constitute no defense."

It can yet be said that the decisions are almost uniform to the same effect.

It is alleged as error that in his charge the court stated to the jury the value of the horse killed. The record shows that no issue was raised upon that question. Defendant conceded the qualifications of a witness called to prove value and offered no testimony to the contrary. The testimony was positive, undisputed, and unchallenged on that point. If the jury found for the plaintiff, the verdict could be only for the amount stated. We see no error in the charge in that particular.

Error is also alleged upon the following sentence in the charge:

"If the plaintiff recovers in this case, he must recover on this ground, that the railroad company was negligent in not having a cattle guard in place there sufficient to turn stock, and for the purpose for which the cattle guard is intended."

Standing alone this portion of the charge would be questionable, but, as has often been held, it must be considered in connection with the rest of the charge, taken as a whole. It was introductory, and immediately elaborated and explained as follows:

"We have a statute in this State which makes it the duty of the railroad company to guard the approaches to the highway on either side by cattle guards sufficient to turn domestic stock, under ordinary circumstances, from the right of way, so the cattle cannot pass over the guard, and from there down on to the right of way. We have another statute in this State which enables a railroad

company to adopt a given structure of a cattle guard, and submit it to the railroad commissioners of the State, and if that commission approves of the cattle guard submitted, and the railroad company puts in a guard in conformity with the plan submitted and approved, then it is a complete answer to a case like this, even though *as a matter of fact* it is not sufficient to turn stock."

Error is also alleged upon the following portion of the charge:

· " The only material, or at least the main material, dispute in this case is whether or not the cattle guard in question did conform in specification and in structure and in dimension to the way in which it was to go under the plan submitted and approved by the State railroad commission. If it did, the plaintiff is not entitled to recover, and your verdict should be for defendant.   But, if the cattle guard there which was in use and in place, as shown without dispute in the testimony on both sides, did not conform to the plan submitted and approved by the State authorities, the railroad commission, was different in dimension and different in structure, and because of that difference it was insufficient to turn stock, and did not turn the horse in question, then the plaintiff is entitled to recover, and your verdict should be for him."

At the trial the controlling issue was whether or not the cattle guard in question corresponded with plans approved by the railroad commission.   Plaintiff's testimony as to the ownership and value of the horse, the circumstances of its death, and that the guard over which it passed to the right of way was insufficient to turn stock, was met by no testimony to the contrary and stood uncontroverted.

That the plan defendant offered in evidence was one approved by the railroad commission was undisputed.   Defendant's testimony that the cattle guard in question corresponded with this plan was controverted by the testimony of plaintiff that it did not, in the particular that the bars were fewer, thicker, placed closer together, not beveled as tapering, and not so sharp on the upper edge, rendering it easier and more inviting for stock to cross.   This presented for the consideration of the jury a square issue of fact.

This suit was planted and the defense made under section 6294, 2 Comp. Laws, as amended by Act No. 308, Pub. Acts 1909. The charge, taken as a whole, clearly explained to the jury the provisions of this statute, pointed out the issues of fact applicable to the case, for them to determine, and the rules of law by which they should be governed in passing upon the conflicting testimony.

We find no reversible error in this case, and the judgment is affirmed.

OSTRANDER, C. J., and McALVAY, BLAIR, and STONE, JJ., concurred.